**Opinion issued May 9, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01125-CR

————————————

**ELISA MERRILL WILSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Case No. 10CCR149142**

---

## O P I N I O N

The State prosecuted Elisa Wilson for misdemeanor telephonic harassment

of her former neighbor, Nicole Bailey. *See* TEX. PENAL CODE ANN. § 42.07(a)(4)

(West 2011). A jury found Wilson guilty, and the trial court assessed punishment of 180 days in jail, probated for twelve months.

On appeal, Wilson complains that the evidence does not support the jury's finding that she made repeated telephone calls that were reasonably likely to annoy another, as required under the statute, because the calls that she made were neither repeated nor annoying, offensive, embarrassing, or abusive. We reverse and render a judgment of acquittal.

## Background

Bailey moved into a Fort Bend County subdivision in 2000. She became acquainted with her neighbors, Adam and Stephanie Ballard, as well as Wilson and her husband. The neighbors became friends and socialized frequently. By late 2005, however, both Stephanie Ballard and Bailey's relationships with Wilson had become strained. By 2009, they had become acrimonious.

The information against Wilson charged that, "on or about April 6, 2009 thr[ough] March 3, 2010, [Wilson] did then and there, with intent to harass, annoy, alarm, abuse, torment or embarrass Nicole Bailey, make repeated telephone communications to Nicole Bailey in a manner reasonably likely to harass or annoy or alarm or abuse or torment or embarrass or offend the said Nicole Bailey." The jury heard evidence that Wilson left six telephone messages for Bailey, on April 6,

2009, June 11, 2009, August 31, 2009, September 5, 2009, December 23, 2009,

and February 5, 2010. In these messages, Wilson:

- said that she saw a dog in her yard that looked like the Ballards' dog and asked Bailey to let them know that Adam could come pick it up if they were missing their dog.

- told Bailey that she did not want Bailey to talk to her or approach her in public ever again.

- referred to an incident that occurred on August 30, 2009, in which Wilson followed Bailey through a grocery store screaming at her; Wilson said that she was caught off guard and thought "it was an attack," and stated that she was calling to say she was sorry.

- complained that the work Bailey was having done on her driveway was against the deed restrictions.

- told Bailey that she saw what looked like cement debris from the driveway job that needed to be cleaned up, and that she was asking her "nicely this time."

- reminded Bailey that Wilson had surveillance cameras, told Bailey that she could "come pick up her newspaper," and warned Bailey to leave her alone and not "accost" or "harass" her any more.

Wilson left all of the voicemail messages in the afternoon or early evening. Bailey

did not respond to any of them.

**Evidentiary Sufficiency**

*Standard of review*

We review evidentiary sufficiency challenges under the *Jackson* standard. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.") (referring to *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)). Under this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970*)*; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

Viewed in the light most favorable to the verdict, the evidence is insufficient when either: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt.  *See Laster*, 275 S.W.3d at 518. This standard applies equally to both direct and circumstantial evidence. *King v. State*, 895

4

S.W.2d 701, 703 (Tex. Crim. App. 1995); *Ervin v. State*, 331 S.W.3d 49, 55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd).

We do not weigh any evidence or evaluate the credibility of any witnesses, as this was the function of the fact finder. *Williams*, 235 S.W.3d at 750. Instead, we determine whether both the explicit and implicit findings of the fact finder are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict and resolving any inconsistencies in the evidence in favor of the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

### *Telephonic harassment*

"A person commits [the offense of harassment] if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX. PENAL CODE ANN. § 42.07(a)(4). The jury heard evidence of the neighbors' acrimonious relationship, but the mere act of "making repeated telephone calls is not, by its nature, criminal, nor is it a criminal act merely because of the circumstances during which it is conducted." *Blount v. State*, 961 S.W.2d 282, 284 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

Rather, "the Legislature intended the phrase 'repeated telephone communications' to mean 'more than one telephone call in close enough proximity

5

to properly be termed a single episode,' because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies their criminal prohibition." *Scott v. State*, 322 S.W.3d 662, 669 n.12 (Tex. Crim. App. 2010). In contrast to actionable "repeated telephone communications," the telephone harassment statute does not support a criminal conviction when the defendant's calls to the complainant are "separated by periods of months or years." *United States v. Darsey*, 342 F. Supp. 311, 313 (E.D. Pa. 1972); *see also Brumit v. State*, No. 05-92-02325-CR, 1994 WL 370106, at *6 (Tex. App.—Dallas July 13, 1994) (not designated for publication) (looking to common usage of the word "repeated," as meaning "done, made, or said again and again") (quoting WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY 1216 (1989)). *Cf.* FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097–02, 50105 (Dec. 13, 1988) (defining "repeatedly" as "calling with excessive frequency under the circumstances"). "The statutory subsection, by its plain text, is directed only at persons who, with the specific intent to inflict emotional distress, repeatedly use the telephone to invade another person's personal privacy and do so in a manner reasonably likely to inflict emotional distress." *Scott*, 322 S.W.3d at 669–70.

*Analysis*

Wilson left just two of the six messages over a thirty-day period—on August 31, 2009 and September 5, 2009. Both specifically related to Bailey's driveway construction project. In the second message, Wilson reported that she saw cement in the gutters that needed to be cleaned up. Bailey testified that a mixture of dust from the cement and water was running down the gutter, and that she and her crew cleaned it. Even if the August 31 and September 5 calls occurred "in close enough proximity to properly be termed a single episode," Bailey's own testimony acknowledged a legitimate reason for the September 5th call, which negates any reasonable inference that Wilson left the message with the intent to harass Bailey, or that it was made in a manner reasonably likely to harass or annoy her. *See Blount*, 961 S.W.2d at 284 (noting that "culpability is required as to the result of the conduct," by showing that actor wants to cause the result of harassing or annoying his victim).

The four remaining messages occurred too far apart over the ten-month period to be considered "part of a single episode." *Cf. id.* ("Although two calls in one night and two calls sometime during the month before are not many calls, under the legal sufficiency standard, we find there is sufficient evidence to support the finding of repeated calls."). Considering the evidence in the light most favorable to the verdict, we hold that no rational fact finder could have found

7

beyond a reasonable doubt that Wilson made repeated telephone communications with the intent to harass Bailey. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

## Conclusion

We hold that legally sufficient evidence does not support Wilson's conviction for telephonic harassment. We therefore reverse the trial court's judgment and render a judgment of acquittal.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish. TEX. R. APP. P. 47.2(b).