**Elisa Merrill WILSON, Appellant**

v.

**The STATE of Texas.**

**No. PD–0755–13.**

Court of Criminal Appeals of Texas.

Sept. 17, 2014.

Dissenting Opinion on Denial of Rehearing Dec. 10, 2014.

Timothy A. Hootman, Houston, TX, for Appellant.

John R. Messinger, Assistant State Prosecuting Attorney, Lisa C. McMinn, State's Attorney, Austin, TX, for The State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, and HERVEY, JJ., joined.

Elisa Wilson appealed her telephone-harassment conviction claiming that the evidence was legally insufficient to establish that she made repeated telephone communications in a manner reasonably likely to annoy or alarm another. The court of appeals acquitted Wilson, finding that Wilson's calls were neither repeated nor reasonably likely to harass or annoy. We hold that (1) the phrase "repeated telephone communications" does not require the communications to occur within a certain time frame in relation to one another, and (2) a facially legitimate reason for the communication does not negate per se an element of the statute. We reverse and remand.

## BACKGROUND

Complainant Nicole Bailey moved into the Kelliwood Terrace subdivision in Fort Bend County in 2000. She became acquainted and frequently socialized with Wilson, her next-door neighbor. By 2009, however, their relationship had soured and eventually led to Bailey filing a criminal complaint alleging that she was the victim of Wilson's harassment.

The information charging Wilson with harassment under Texas Penal Code § 42.07(a)(4)[1] stated that "Elisa Merrill Wilson ... on or about April 06, 2009 [through] March 03, 2010, did then and there ... with intent to harass, annoy, alarm, abuse, torment or embarrass Nicole Bailey, make repeated telephone communications to Nicole Bailey in a manner reasonably likely to harass or annoy or alarm or abuse or torment or embarrass or offend the said Nicole Bailey." The evidence at trial focused on six voicemail messages that Wilson left on Bailey's phone over a period of ten months. The jury heard testimony from Bailey regarding various interactions between the two during that time period.

On April 6th, 2009, Wilson left a message saying that a neighbor's dog was in her yard and that Bailey should inform the dog's owner. On June 11th, Wilson left a message stating that debris from construction being done on Bailey's driveway was running into a storm drain. Around the same time as this message, Wilson con-

---

1. TEX. PENAL CODE § 42.07(a)(4) (West 2010) ("A person commits an offense, if with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

. . .

(4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another[.]").

fronted Bailey on Bailey's driveway, yelling at her and taking pictures of her. Additionally, police and environmental authorities visited Bailey regarding the drainage, but no fines or sanctions were imposed. Bailey stated that the message and the related events left her "[a]nnoyed, intimidated, frightened, frustrated, [and] tired."

On August 30th, Wilson again confronted Bailey and Bailey's boyfriend in a grocery store. Bailey testified that she and her boyfriend did not respond to Wilson's shouts and immediately went to the front of the store to check out. However, Wilson followed them and continued to yell, accusing Bailey of being a prostitute and Bailey's boyfriend of being a "pimp" and a "drug dealer." On August 31st, the following day, Wilson left a message apologizing, but also stating that she had felt like Bailey had been attacking her. Bailey testified that she and her boyfriend had done nothing to provoke Wilson's behavior, and that this incident and the subsequent message made her feel harassed, annoyed, and alarmed. Six days later, on September 5th, Wilson left another message, demanding that Bailey never talk to her or approach her in public again.

On December 23rd, Wilson left a message complaining that the work Bailey was doing on her driveway was in violation of deed restrictions. On February 5th, 2010, Wilson left a message stating that her security cameras had observed Bailey leaving a newspaper on Wilson's lawn, and that Bailey should come retrieve it. Bailey testified that she had not left a newspaper on Wilson's lawn and that the message was an attempt to get her to come onto

Wilson's property. She further testified that on the same day, Bailey and her boyfriend had encountered Wilson on the street in front of Bailey's house and that Wilson began screaming profanities and making accusations similar to those made in the grocery store in August. Bailey stated that these events made her feel alarmed and offended.

The jury found Wilson guilty of telephone harassment, and she was sentenced to twelve months' community supervision. Wilson appealed, arguing that the evidence did not support the jury's verdict because calls occurring over a period of ten months did not constitute "repeated" communications as required by statute, and because her messages were not objectively annoying, offensive, embarrassing, or abusive.[2] The court of appeals agreed.[3] The court first stated that those messages that were not within a thirty-day period of each other were not in close enough proximity to be considered a single episode, and thus did not constitute "repeated" communications.[4] The court did identify two messages, those from August 31st and September 5th, that were within a thirty-day period. However, the court stated that the fact that Wilson made the September 5th message for a facially legitimate reason "negat[ed] any reasonable inference that Wilson left the message with the intent to harass Bailey, or that it was made in a manner reasonably likely to harass or annoy her."[5] As a result, the court held that no rational fact finder could have found Wilson guilty, and rendered a judgment of acquittal.

## "REPEATED" COMMUNICATIONS

A person commits the offense of telephone harassment if she, "with intent to

2. *Wilson v. State*, 431 S.W.3d 92, 94 (Tex. App.–Houston [1st Dist.] 2013).

3. *Id.* at 96.

4. *Id.* at 96 (citing *Scott v. State*, 322 S.W.3d 662, 669 n. 12 (Tex.Crim.App.2010)).

5. *Id.* at 95.

harass, annoy, alarm, torment, or embarrass another ... makes repeated telephone communications ... in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." [6] The main question we are presented with today is whether any or all of the six telephone messages left by Wilson over a period of ten months constitute "repeated" communications.

The court of appeals cited to this Court's decision in *Scott v. State*[7] in holding that the messages that were not within thirty days of one another were not repeated communications.[8] In *Scott*, we acknowledged that the offense of telephone harassment requires an actor to make "repeated telephone calls to the victim; one telephone call will not suffice." [9] The Court affixed the following annotation to this statement:

> The term "repeated" is commonly understood to mean "reiterated," "recurring," or "frequent." Here, we believe that the Legislature intended the phrase "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode," because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies their criminal prohibition.[10]

We find the *Scott* footnote neither controlling nor persuasive. First, *Scott* did not require this Court to determine whether "repeated" requires the actor's calls to exist in "close enough proximity to properly be termed a single episode." In that case, the issue before the Court concerned whether § 42.07(a)(4) unconstitutionally infringed upon First Amendment rights.[11] The Court concluded that it did not because "the statutory subsection does not implicate the free-speech guarantee of the First Amendment." [12] We agree with the parties that the footnote was dicta because it was unnecessary to *Scott's* reasoning or conclusion.

Second, the footnote contains no persuasive value because it lacks relevant reasoning. We take no issue with the definitions it offered from common dictionaries. However, the pronouncement of what the Legislature intended in passing § 42.07(a)(4) without any statutory interpretation is unsupportable. The *Scott* Court relied on a 1989 law-review article to support its definitive statement that "the Legislature intended the phrase 'repeated telephone communications' to mean 'more than one telephone call in close enough proximity to properly be termed a single episode[.]' " [13] This definition does not come from the statutory text at issue or extratextual sources indicative of the Texas Legislature's intent. It was instead taken from a model statute proposed by the article's author in which the author defined "repeated telephone calls" as "mean[ing] more than one call in close enough proximity to rightly be termed a

---

6. Tex. Penal Code § 42.07(a)(4) (West 2010).

7. *Scott*, 322 S.W.3d at 662.

8. *Wilson*, 431 S.W.3d at 95.

9. *Scott*, 322 S.W.3d at 669.

10. *Id.* at 669 n. 12 (citations omitted).

11. *Id.* at 669–70.

12. *Id.* (holding that the statute's offenders "will have only the intent to inflict emotional distress for its own sake" and if conduct was communicative conduct, it "invades the substantial privacy interests of another (the victim) in an essentially intolerable manner.").

13. *Id.* at 669, n. 12 (citing M. Sean Royall, Comment, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision*, 56 U. Chi. L.Rev. 1403, 1430 (1989)).

single episode."[14] Other than the similarly worded "repeated" phrase, there is no connection between the proposed statute and § 42.07(a)(4). Moreover, the article's proposed statute could not have influenced Texas's harassment statute because § 42.07(a)(4) was enacted approximately six years before the article was published.[15]

Third, the Court's definition of repeated itself causes confusion. Defining repeated to mean more than one call in close enough proximity to properly be termed a single episode merely begs the question and offers no definition at all. How are courts to define a single episode? The Court was unclear whether this was an inartful reference to "criminal episode" found in Chapter 3 of the Penal Code or something else entirely.[16] As Presiding Judge Keller's dissent in *Scott* pointed out, "Would once a day for a month constitute 'a single episode?' "[17] The *Scott* majority's reasoning provides no answer.

■■■ We accordingly disavow the troublesome footnote and turn to the rules of statutory construction to determine what the Legislature meant by "repeated telephone communications." In construing a statute, we limit our analysis to the plain meaning of the text, unless the language is ambiguous or the plain meaning leads to absurd results that the Legislature could not have possibly intended.[18] When we are called upon to go beyond the plain meaning of the text, we may consider various extratextual factors, including but not limited to the objective the statute seeks to attain, the circumstances under which the statute was enacted, legislative history, former statutory provisions, and the consequences of a particular construction.[19]

We must initially determine whether § 42.07(a)(4)'s undefined use of "repeated" is ambiguous. Neither party contends that it is ambiguous *per se*, but each suggests the Court adopt different definitions. The State offers a number of definitions of the word "repeated," including "said, made, done, or happening again, or again and again"[20] and "renewed or recurring again and again."[21] The State argues that the recurrence of Wilson's telephone calls satisfies the dictionary definitions of "repeated" because it was behavior that recurred "again." Wilson too asserts that "repeated" is unambiguous, but urges this Court to adopt the definition of "repeated" used in our dicta in *Scott:* " 'reiterated,'

14. Royall, *supra* note 12, at 1425("(g) The term 'repeated telephone calls' means more than one call in close enough proximity to rightly be termed a single episode.").

15. *See* Acts of 1983, 68th Leg., R.S., ch. 411, § 1, p. 2204, 2204–2206 (effective Sept. 1, 1983).

16. *See* TEX. PENAL CODE § 3.01 (West 2012) ("In this chapter, 'criminal episode' means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offenses.").

17. *Scott*, 322 S.W.3d at 672 (Keller, P.J., dissenting).

18. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim.App.1991).

19. *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim.App.2004); *see also* TEX. GOV'T CODE § 311.023 (West 2012).

20. WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY 1533(Unabridged 2nd ed.1983).

21. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1924 (Unabridged 2002).

'recurring,' or 'frequent.' "[22] Wilson states that this definition reflects the Legislature's unambiguous attempt to exclude actions not in close proximity.

■ Common to all issues of potential statutory ambiguity, whether a statutory term or phrase is ambiguous depends upon the guidance sought from the statute. The statute's use of "repeated" simply speaks in terms of the number of telephone communications, it does not attempt to define the required frequency of the communications or temporal proximity of one communication to another.[23] Finding § 42.07(a)(4)'s use of "repeated" ambiguous in describing these specific characteristics of the communication asks too much of the term. It would require presuming that the Legislature intended to define and regulate this type of harassing conduct by a particular frequency or temporal standard-a notion unsupported by the statute's plain language. We find the court of appeals' treatment of telephone communications occurring outside a thirty-day period from each other is inconsistent with § 42.07(a)(4)'s plain language.

■ It is unquestioned that "repeated" means, at a minimum, "recurrent" action or action occurring "again." To resolve the question presented, we need not go any further than we did in Scott, that "one telephone call will not suffice" and a conviction secured by evidence of a single communication will not stand.[24] The communications' periodic frequency or the temporal relationship of each communica-

tion are characteristics that may further describe the communications' nature, but we do not find those characteristics necessary to the definition of repeated. This is not to say that such things will be irrelevant. Although the State may legally obtain a harassment conviction under § 42.07(a)(4)'s prohibited repeated-telephone-communications theory on the bare minimum of two telephone communications, we think it exceedingly rare that the State will be able to sufficiently prove that the defendant made those communications with the intent to harass, annoy, alarm, abuse, torment, or embarrass another.[25] As with all prosecutions, the State may rely upon the circumstances surrounding a defendant's actions to prove his intent. The total number of communications (provided it is greater than one) and the frequency and the temporal relationship of the communications are more appropriately considered evidentiary matters that may be probative of both the defendant's intent and whether the communications are made in a manner prohibited by the statute.

■ In her concurrence, Judge Cochran alleges that our statutory interpretation of the term repeated invites a constitutional vagueness and overbreadth challenge to the statute.[26] Whatever the merits of Judge Cochran's concerns, they are not implicated in Wilson's legal-sufficiency challenge. Moreover, while we have a duty to interpret statutes in a way as to preserve their constitutionality, we can do so only to the extent that our interpreta-

---

22. *Scott*, 322 S.W.3d at 669 n. 12 (quoting Webster's Ninth New Collegiate Dictionary 998 (1988); 2 Oxford English Dictionary 2494 (1971)).

23. *Cf.* Tex. Penal Code § 25.072 (West 2012) ("Repeated Violation of Certain Court Orders or Conditions of Bond in Family Violence Case. (a) A person commits an offense if, during a period that is 12 months or less in duration,

the person two or more times engages in conduct that constitutes an offense under Section 25.07.").

24. *Scott*, 322 S.W.3d at 669.

25. *See* Tex. Penal Code § 42.07(a) (West 2012).

26. *Post*, at 430 (Cochran, J., concurring).

tive authority permits.[27] The explanation of how § 42.07(a)(4)'s constitutionality allegedly hangs on *Scott* footnote's definition of repeated itself is forced to alter the footnote's substance by inserting the word "criminal" in the footnote's "criminal episode" phrase and then interpret that phrase, as amended, to mean "common scheme or plan."[28] Like the *Scott* footnote, Judge Cochran's approach does not provide any persuasive authority as to why "repeated" should be defined this way consistent with legislative intent nor any argument that this statute is "readily subject" to such an interpretation without exceeding our interpretative authority.

## LEGAL SUFFICIENCY OF THE EVIDENCE

■ Evidentiary sufficiency challenges are reviewed under the standard set forth by the United States Supreme Court in *Jackson v. Virginia:* "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt."[29] This requires us to assess the evidence in the light most favorable to the prosecution.[30] We will uphold the verdict unless a rational factfinder must have had reasonable doubt with respect to any essential element of the offense.[31]

The court of appeals dismissed the probativeness of Wilson's voicemail concerning the runoff from Bailey's driveway construction project because the call's facially legitimate reason "negat[ed] any reasonable inference that Wilson left the message with the intent to harass Bailey, or that it was made in a manner reasonably likely to harass or annoy her."[32] We disagree with this conclusion for two main reasons and conclude, by way of an alternate holding, that the court's sufficiency analysis was flawed. First, a plain-language reading of § 42.07(a)(4) does not excuse from criminal culpability the act of making prohibited repeated telephone communications if the content of the communications is facially "legitimate," however that term may be defined. Second, the existence of evidence that may support the conclusion that the call had a facially legitimate purpose does not legally negate the prohibited intent or manner of the call. Benign content does not always prove benign intent, nor the objective harmlessness of its delivery. Determining the evidence's sufficiency with respect to Wilson's intent of the communication required the court of appeals to consider all the evidence presented at trial and the rational inferences drawn from it.[33] By analyzing only testimony suggesting the benign intent of the call, "the court failed to properly consider the combined and cumulative force of the evidence and to view the evidence in the light most favorable to the jury's guilty verdict."[34]

**27.** *Long v. State,* 931 S.W.2d 285, 295 (Tex. Crim.App.1996) (holding that this Court may only narrowly construe a statute to preserve its constitutionality when it is "readily subject" to such a construction.)

**28.** *Post,* at 421–22 (Cochran, J., concurring).

**29.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim.App.2010).

**30.** *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim.App.2009) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781).

**31.** *Laster,* 275 S.W.3d at 518; *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992).

**32.** *Wilson,* 431 S.W.3d at 96.

**33.** *See, e.g., Merritt v. State,* 368 S.W.3d 516, 526 (Tex.Crim.App.2012).

**34.** *Merritt,* 368 S.W.3d at 526 (citing *Hooper v. State,* 214 S.W.3d 9, 16–17 (Tex.Crim.App. 2007)).

■ We find the evidence legally sufficient. From the content of the six calls over the ten-month period, combined with evidence of Wilson's combative conduct and verbal abuse toward Bailey, the jury could have rationally found that Wilson, with the intent to harass, annoy, alarm, abuse, torment, or embarrass Bailey, made repeated telephone communications to Bailey in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend her.

## CONCLUSION

Because we find the evidence legally sufficient, we reverse the court of appeals' judgment acquitting the defendant. The case is remanded to the court of appeals to address Wilson's remaining issues.

KELLER, P.J., filed a concurring opinion in which JOHNSON, J., joined.

COCHRAN, J., filed a concurring opinion in which JOHNSON, and ALCALA, JJ., joined.

WOMACK, J., concurred.

KELLER, P.J., filed a concurring opinion in which JOHNSON, J., joined.

In *Scott v. State,* this Court upheld the telephone harassment statute, holding that the statute does not implicate the First Amendment.[1] Two of the reasons given in support of upholding the statute have been abandoned by the Court today. The Court in *Scott* interpreted the term "repeated" to mean that the telephone calls at issue must be in close enough temporal proximity "to be properly termed a single episode."[2]

Today, the Court says that "repeated" simply means that "one telephone call will not suffice." The Court in *Scott* also contended that, "in the usual case, persons whose conduct violates § 42.07(a)(4) will not have an intent to engage in the legitimate communication of ideas, opinions, or information; they will have only the intent to inflict emotional distress for its own sake."[3] Today, the Court says that the facially legitimate purpose of the call does not negate the prohibited intent or manner of the call.

I cannot quarrel with the Court's holdings; I anticipated both in my dissent in *Scott.*[4] But I do not share the Court's optimism that it will be "exceedingly rare that the State will be able to sufficiently prove that the defendant made [two telephone] communications with the intent to annoy, harass, alarm, abuse, torment, or embarrass another."

At the time *Scott* was decided, I said that "[t]he mischief this statute can create is enormous,"[5] and the present case has only reinforced that conclusion. The message the telephone harassment statute provides to the public is, "If you have any disagreements with your neighbor, and you have called her on the telephone once, do not ever call her on the telephone again, or you will be exposed to criminal liability." Even worse, because the statute is not limited to calls made to someone's home phone or even to a personal phone, the "only one phone call" rule applies to any phone conversation, anywhere—including a phone call made to a public official at his government office. In light of the Court's abandonment of some of the

---

1. 322 S.W.3d 662, 669 (Tex.Crim.App.2010).

2. *Id.* at 669 n. 12.

3. *Id.* at 670.

4. *Id.* at 673 (criticizing the Court's definition of "repeated"), *id.* at 676–77 ("nothing in the statute limits its application to those occasions when the actor's sole intent is to inflict emotional distress") (Keller, P.J., dissenting).

5. *Id.* at 676.

rationales in *Scott,* we ought to, when the issue is raised again, re-evaluate our holding in that case. Because the continuing viability of *Scott* is not currently before us, and because the Court correctly applies the statute to the facts in this case, I concur in the Court's judgment.

COCHRAN, J., filed a concurring opinion in which JOHNSON and ALCALA, JJ., joined.

I agree with the majority that the evidence is sufficient to support appellant's conviction for telephone harassment. I respectfully disagree that the term "repeated" in the telephone-harassment statute means just "more than one telephone call."[1] We ought not jettison the discussion of the term "repeated" from our prior telephone-harassment decision, *Scott v. State,*[2] particularly since the majority's

new definition clearly invites a vagueness and overbreadth challenge to the statute.[3] The federal courts declared our previous telephone-harassment statute unconstitutionally vague,[4] and, under the majority's interpretation, they will surely be asked to do so again.[5] As Presiding Judge Keller notes, under the majority's interpretation, any two annoying calls made by a single person to another person over any undefined period of time suffices to create criminal liability.[6] I do not think that this is what the Legislature intended, and I do not think that such a position can withstand constitutional scrutiny.

I believe that the Legislature intended the term "repeated" to mean, just as we said in *Scott,* sufficiently "recurring" or "frequent" to constitute a single episode, *i.e.,* a single criminal episode "committed

1. *See* Majority Op., at 424 (stating that "the State may legally obtain a harassment conviction under § 42.07(a)(4)'s prohibited repeated-telephone-communications theory on the bare minimum of two telephone communications").

2. 322 S.W.3d 662, 669 n. 12 (Tex.Crim.App. 2010). In *Scott,* we noted:
   The term "repeated" is commonly understood to mean "reiterated," "recurring," or "frequent." *Webster's Ninth New Collegiate Dictionary* 998 (1988); 2 *Oxford English Dictionary* 2494 (1971). Here, we believe that the Legislature intended the phrase "repeated telephone communications" to mean "more than one telephone call in close enough proximity to properly be termed a single episode," because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies their criminal prohibition. *See* M. Royall, *Constitutionally Regulating Telephone Harassment: An Exercise in Statutory Precision,* 56 U. Chi. L.Rev. 1403, 1430 (1989) ("Prudence may justify a hands-off policy for single calls made with the intent to harass, but as harassing calls are repeated the state interest in intervening to protect · the recipient becomes more compelling."). *Id.* I think that our discussion in *Scott,* albeit *dicta,* was important to preserve the constitu-

tionality of the harassment statute against a vagueness or overbreadth challenge.

3. Indeed, one of the issues presented in *Scott* was whether the term "repeated" in the telephone harassment statute was unconstitutionally vague. *See id.* at 667.

4. *See Kramer v. Price,* 712 F.2d 174, 178 (5th Cir.1983) (holding Texas telephone-harassment statute unconstitutionally vague for failing to (1) construe the terms "annoy" and "alarm" in a manner that would lessen their inherent vagueness, and (2) specify whose sensibilities must be offended).

5. *See Alexander v. Johnson,* 217 F.Supp.2d 780, 800 (S.D.Tex.2001) (discussing, in *dicta,* possible constitutional deficiencies of the Texas telephone-harassment statute and the vagueness of its terms).

6. *See* Concurring Op. at 420 (Keller, P.J., concurring) (noting that the majority's message to the public concerning the telephone-harassment statute is, " 'If you have any disagreements with your neighbor, and you have called her on the telephone once, do not ever call her on the telephone again, or you will be exposed to criminal liability.' ").

pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan." [7] In *Scott*, we provided this narrowing interpretation of the telephone-harassment statute to preserve its constitutionality against a "vagueness" challenge and to satisfy First Amendment guarantees. [8]

The purpose of the telephone-harassment statute is to protect an individual's privacy rights from another person's unwanted or offensive speech. "There is simply no right to force speech into the home of an unwilling listener." [9] On the other hand, criminal statutes that restrict First Amendment liberties must be narrowly tailored and specific to avoid the potential for chilling protected speech. [10] A law could be void for vagueness for either one of two independent reasons: "First, [the statute] may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." [11]

To avoid invalidating legislative enactments, courts may construe statutes that raise First Amendment concerns narrowly to clarify potentially vague statutory terms. That is precisely what we did in *Scott* in explaining that the purportedly vague term of "repeated" meant that criminal liability may be imposed only when the defendant makes multiple harassing tele-

---

**7.** Tex. Penal Code § 3.01(1).

**8.** *Scott*, 322 S.W.3d at 669; *see also People v. Astalis*, 226 Cal.App.4th Supp. 1, 172 Cal. Rptr.3d 568, 575 (2014) ("Narrowly interpreted to preserve its constitutionality under the First Amendment, a person violates the [telephone harassment] statute only when he or she (1) makes 'repeated' contacts, meaning 'recurring' or 'frequent' contacts; (2) with the specific intent to 'annoy,' meaning intentionally engaging in 'conduct designed to disturb, irritate, offend, injure, or at least tend to injure, another person,' or with the specific intent to 'harass,' meaning engaging in 'a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose.' "); *State v. Alexander*, 76 Wash.App. 830, 888 P.2d 175, 182 (1995) (rejecting vagueness challenge to use of the word "repeatedly" in telephone-harassment statute as its definition was clear to "persons of common intelligence" and noting that "Webster's defines 'repeated' as 'said, made, or done again, or again and again.' ").

**9.** *Frisby v. Schultz*, 487 U.S. 474, 484–85, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (explaining that "a special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions.").

**10.** Under the vagueness doctrine, judicial scrutiny is most rigorous when the law in question impinges on First Amendment freedoms. *See Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity than in other contexts."). Courts impose heightened scrutiny on statutes affecting the First Amendment because prohibitions of uncertain scope may have a "chilling effect" on the exercise of protected rights. As the Supreme Court stated in *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964), vague statutes cause citizens to " 'steer far wider of the unlawful zone' ... than if the boundaries of the forbidden areas were clearly marked," restricting their conduct "to that which is unquestionably safe. Free speech may not be so inhibited." *Id.* at 372, 84 S.Ct. 1316. Thus, the requirement of specificity is enforced with special rigor when it serves to avoid the incidental impairment of First Amendment freedoms.

**11.** *City of Chicago v. Morales*, 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999).

phone communications frequently or as part of a "single [criminal] episode,"[12] *i.e.,* pursuant to "a common scheme or plan." A telephone harassment common plan or scheme might take the form of numerous telephone calls within a short period of time, all relating to a single objective, or they might be calls that are repeated over a long period of time, but still relating to a single objective or goal.

For example, a person might make various unwanted telephone calls, in-person harassing statements, derogatory social-media posts, false reports to the police, animal control, or CPS, and perhaps play practical jokes on the victim—all interspersed over a year or more—with the ultimate goal of publicly humiliating the victim, making that person lose her job, making her move, or literally driving her crazy. The telephone calls might be repeated only three or four times, but, coupled with the evidence of other types of harassment, they are sufficient to prove the person's scheme or plan and his intent to harass the victim.

I agree with the majority that, in this case, the full history of the rocky relationship between appellant and Nicole Bailey proves that appellant made "repeated" harassing telephone calls to Ms. Bailey over the space of a year, and those six telephone calls were made pursuant to a common scheme or plan to "harass, annoy, alarm, abuse, torment, or embarrass" her neighbor.[13] Like the jury, I have listened to those telephone calls, and, like the jury, I conclude that appellant intended to harass and embarrass her neighbor with her repeated telephone calls and her other aberrant behavior.

The law does not require that the repeated calls be made within a certain time frame, as long as they are all part of the same episode, scheme, or plan. Here, the evidence clearly supports the jury's verdict that appellant purposely set out to intimidate, harass, and alarm several of her neighbors. One of them she literally drove out of the neighborhood.[14] She went after Ms. Bailey in the neighborhood, in stores, and by invading her privacy

---

12. *Scott,* 322 S.W.3d at 669 & n. 12.

13. As the State Prosecuting Attorney (SPA) notes,

> Appellant's activities extended beyond the phone messages. Appellant told several neighbors that Bailey was a prostitute, a "porn queen," running an internet pornography ring, "Mafia-related," and dealing drugs, "you name it." Appellant would walk around in front of and behind Bailey's house blowing a whistle that could be heard inside, yelling at her and calling her names. Appellant threw firecrackers in Bailey's pool and on her car, leaving burn marks on it. Appellant called the police and said Bailey had killed herself; the officers were irritated but not surprised that the call was unfounded and, at Bailey's request, told appellant not to contact Bailey again.

SPA's Brief at 6.

14. The evidence showed that appellant harassed another neighbor, Stephanie Ballard, so much that, after a peace bond was denied

and a civil suit deemed insufficient, she moved and tried to keep her new address secret. But appellant tracked her down at her church and then called her on her new unlisted telephone number. The harassment began after appellant's lawyer sent Mrs. Ballard a letter seeking damages for an "assault" that occurred when Mr. Ballard did not hug appellant at the Baileys' Christmas party. Thereafter, someone made three false allegations against Mrs. Ballard to CPS, including one complaint that alleged Ms. Bailey ran a pornography site using Mrs. Ballard's children. One day after Mrs. Ballard called the police because appellant was taking pictures of her children playing outside, a false report was made to Animal Control that Mrs. Ballard was letting her chihuahua/dachshund "run rabid" around the neighborhood. Both Mr. and Mrs. Ballard had their car tires punctured.

through repeated harassing telephone calls. The evidence supporting appellant's criminal conviction is not just sufficient, it is overwhelming.

I therefore concur in the majority's judgment, although I cannot join its opinion.

### ON APPELLANT'S MOTION FOR REHEARING

Rehearing denied.

### DISSENTING OPINION

ALCALA, J., filed an opinion dissenting to the denial of Appellant's Motion for Rehearing in which JOHNSON and COCHRAN, J.J., joined.

I respectfully dissent from this Court's decision to deny the motion for rehearing filed by Elisa Merrill Wilson, appellant. I would grant rehearing to address appellant's challenge to the constitutionality of the telephone harassment statute as it has now been interpreted by this Court to permit, for the first time, a conviction based on only two telephone calls that might occur months, years, or perhaps even decades, apart.[1]

In *Scott v. State*, this Court stated, "Here, we believe that the Legislature intended the phrase 'repeated telephone communications' to mean 'more than one telephone call *in close enough proximity* to properly be termed a single episode,' because it is the frequent repetition of harassing telephone calls that makes them intolerable and justifies·their criminal prohibition." *Scott v. State*, 322 S.W.3d 662, 669 n.12 (Tex.Crim App.2010) (emphasis

added). In reliance on this Court's statement of the law in *Scott*, and citing to an opinion by a federal district court for authority on the period of time that could be considered to be "in close enough proximity," the court of appeals determined that the statute would not support a conviction when the defendant's calls to the complainant were "separated by periods of months or years." *Wilson v. State*, 431 S.W.3d 92, 95 (Tex.App.–Houston [1st Dist.] 2013). Now, within a relatively short period of time, this Court has changed its mind. *Wilson v. State*, No. PD–0755–13, 448 S.W.3d 418, 421–22, 2014 WL 4627264, at *4–5 (Tex.Crim.App. Sept. 17, 2014). In an about-face from our recent precedent in *Scott*, this Court now describes the applicable law by noting that "the phrase 'repeated telephone communications' does not require the communications to occur within a certain time frame in relation to one another." *Id.* at 430. Had this Court taken its current position in Scott, then the First Court of Appeals would not have focused on the fact that appellant "left just two of the six messages over a thirty-day period" in reaching its decision that the evidence was insufficient. *Wilson*, 431 S.W.3d at 96.

Now that this Court, for the first time in this case, has changed its position regarding the requirements for establishing the offense of telephone harassment, appellant has filed a meritorious motion for rehearing in which she argues that this Court's current interpretation "has created a vagueness and overbrea[d]th problem with the statute, which must now be raised by

---

[1] The statute of limitations for telephone harassment, a class B misdemeanor, is two years. See Tex. Penal Code § 42.07(c); Tex. Code Crim. Proc. art. 12.02. So long as one call occurred within the limitations period, the evidence would likely be legally sufficient, under this Court's current formulation of the

law, for a call in 2000 and a call in 2014. *See, e.g., Tita v. State*, 267 S.W.3d 33, 35 n.1 (Tex.Crim.App.2008) (noting that the limitations period for aggregated theft begins to run on the date of the last theft, i.e., the end date of a "scheme or continuing course of conduct").

appellant." Appellant explains that "under the *Scott* interpretation of the statute there was no clear vagueness or overbrea[d]th problem[,] but under the *Wilson* interpretation there is." Because there had been no reason to challenge the vagueness or overbreadth of the telephone harassment statute as this Court had interpreted its requirements in *Scott*, appellant had no reason to assert that challenge until this Court's reformulation of the law in this case. Appellant should not be faulted for failing to raise what would have been a frivolous argument under the law as it existed when she filed her appeal, an argument that would have essentially asked this Court to cling to its existing precedent and not to change it.

Appellant did not have a crystal ball to look into the future and see that this Court would reinterpret the telephone harassment statute in her case. For that reason, I would grant appellant's motion for rehearing and address both the merits of the initial appeal and her current argument that permitting a conviction for telephone calls that are not in close proximity renders the statute unconstitutionally vague and overbroad.