ACCEPTED
04-15-00156-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/1/2015 1:50:38 PM
KEITH HOTTLE
CLERK

NO. 04-15-00156-CR

IN THE COURT OF APPEALS

FOR THE

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/01/15 1:50:38 PM
KEITH E. HOTTLE
Clerk

FOURTH COURT OF APPEALS DISTRICT

OF TEXAS

SAN ANTONIO, TEXAS


JORGE ISAAC SANCHEZ-MARBAN,
Appellant

VS.

THE STATE OF TEXAS,
Appellee

Trial Cause No. 441416
Appeal from County Court-at-Law No. 14
Bexar County, Texas
Hon. Susan Skinner, Presiding


BRIEF FOR APPELLANT


MICHAEL D. ROBBINS
Assistant Public Defender
Paul Elizondo Tower
101 W. Nueva St., Suite 310
San Antonio, Texas 78205
ORAL ARGUMENT          (210) 335-0701
NOT REQUESTED          FAX (210) 335-0707
                       mrobbins@bexar.org
                       Bar No. 16984600

                       ATTORNEY FOR
                       APPELLANT

i

## Identity of Parties and Counsel

Pursuant to TEX. R. APP. P. 38.1(a) (West 2015), the parties to this suit are as follows:

(1)     **JORGE ISAAC SANCHEZ-MARBAN** is the appellant and was the defendant in trial court.

(2)     The **STATE OF TEXAS**, by and through the Bexar County District Attorney's Office, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205, is the appellee and prosecuted this case in the trial court.

The trial attorneys were as follows:

(1)     Jorge Isaac Sanchez-Marban was represented by **TRAVIS KETNER**, 1423 W. Martin St., San Antonio, Texas 78207.

(2)     The State of Texas was represented by **NICHOLAS LOHOOD,** District Attorney, and **NICHOLAS A. KEMMY** and **JOE "TREY" MIMS,** Assistant District Attorneys, Paul Elizondo Tower, 101 W. Nueva St., San Antonio, Texas 78205.

The appellate attorneys are as follows:

(1)     Jorge Isaac Sanchez-Marban is represented by **MICHAEL D. ROBBINS**, Assistant Public Defender, Paul Elizondo Tower, 101 W. Nueva St., Suite 370, San Antonio, Texas 78205.

(2)   The State of Texas is represented by the **BEXAR COUNTY DISTRICT ATTORNEY'S OFFICE**, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 710, San Antonio, Texas 78205.

The trial judge was **HON. SUSAN SKINNER,** County Court-at-Law No. 14, Cadena-Reeves Justice Center, 300 Dolorosa St., 2nd Floor, San Antonio, Texas 78205.

# Table of Contents

                                                                                                        Page

Identity of Parties and Counsel . . . . . . . . . ii

Table of Contents . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . v

A Note Regarding Record References . . . . . . . . vii

Statement Regarding Oral Argument . . . . . . . . vii

Statement of the Case . . . . . . . . . . 1

Issue Presented . . . . . . . . . . . 2

## APPELLANT'S POINT OF ERROR

The evidence was legally insufficient to support the trial court's finding that Jorge Isaac Sanchez-Marban committed the offense of assault – bodily injury.

Statement of Facts . . . . . . . . . . . 3

Summary of the Argument . . . . . . . . . 13

Argument . . . . . . . . . . . . 14

    Appellant's Point of Error (Restated) . . . . . . 14

Conclusion and Prayer . . . . . . . . . 21

Word Count Certificate of Compliance . . . . . . 22

Certificate of Service. . . . . . . . . . 22

# **Table of Authorities**

Page

Constitution

U.S. Const. amend. V . . . . . . . . . 9

U.S. Const. amend. XIV . . . . . . . . . 14

Statutes

Tex. Penal Code § 1.07 (West 2011) . . . . . . . 14

Tex. Penal Code § 22.01 (West 2011) . . . . . . . 1,14

Tex. Penal Code § 22.04 (West 2011) . . . . . . 5

Rules

Tex. R. App. P. 9.4 (West 2015) . . . . . . . . 22

Tex. R. App. P. 38.1 (West 2015) . . . . . . . ii

Tex. R. App. P. 44.2 (West 2011) . . . . . . . 20

Cases

*Barnes v. State*, 876 S.W.2d 316 (Tex. Crim. App. 1994) . . . .15,19

*Byrd v. State*, 336 S.W32d 242 (Tex. Crim. App. 2011) . . . . 15

*Conner v. State*, 67 S.W.3d 192 (Tex. Crim. App. 2001) . . . . 15

*Gollihar v. State*, 46 S.W.3d 243 (Tex. Crim. App. 2001) . . . .16,20

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . .14,15

*Johnson v. State*, 571 S.W.2d 170 (Tex. Crim. App. 1978) . . . 15

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)   .   .   .   .   16

*Matamoros v. State*, 901 S.W.2d 470 (Tex. Crim. App. 1997)   .   .   .15,19

*Rankin v. State*, 46 S.W.3d 899 (Tex. Crim. App. 2001)   .   .   .   .   14

*Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014) .   .   .   .   15

## A Note Regarding Record References

There are two volumes in the reporter's record. In this brief, references to the reporter's record will be thus: (RR 1, ___). References to State's Exhibits 4 and 5, which are videos and not part of the exhibits volume will be thus: (SX 5). References to the main clerk's record will be thus: (CR, ___).

## Statement Regarding Oral Argument

The issue raised in this appeal may be determined from the record and legal authorities alone. For that reason, the undersigned counsel does not request oral argument, but will present oral argument if it is requested by the State and granted by the Court.

TO THE COURT OF APPEALS FOR THE FOURTH COURT OF APPEALS DISTRICT OF TEXAS:

This brief is filed on behalf of Appellant, Jorge Isaac Sanchez-Marban, by Michael D. Robbins, Assistant Public Defender.

## Statement of the Case

Appellant Jorge Isaac Sanchez-Marban was charged by information with the offense of assault – bodily injury.[1] (CR, 8). Appellant waived a jury (CR, 19; RR 1, 15-16), and he pleaded not guilty to the court. (RR 1, 17). Following evidence and arguments of counsel, the trial court found Jorge Isaac Sanchez-Marban guilty of assault – bodily injury. (RR 1, 158). Appellant elected that the court assess punishment in case of conviction. (CR, 18). The court assessed a sentence of 11 months in jail, probated for 11 months, plus a fine of $100, restitution, and court costs. (CR, 23-24; RR 1, 162). The court certified Mr. Sanchez-Marban's right of appeal. (CR, 25, 26). Appellant timely filed notice of appeal. (CR, 27, 20-30). This appeal follows.

---

[1] A class-A misdemeanor, in violation of TEX. PENAL CODE §§ 22.01(a)(1) & (b) (West 2011).

## Issue Presented

## Appellant's Point of Error

The evidence was legally insufficient to support the trial court's finding that Jorge Isaac Sanchez-Marban committed the offense of assault – bodily injury.

## Statement of Facts[2]

**A dispute between neighbors.**

The complainant, **Diann Christian**, resided at 231 Eureka Drive in San Antonio from 2010 until October 2013. Her daughter was Shanna Lozano. (RR 1, 25-26). Ms. Christian lived in a trailer on the property, and her daughter lived in the adjacent house. (RR 1, 26-27). Ms. Christian owned a van, which was in in front of her trailer by the fence on the side of the property. On September 9, 2013, she was checking the spark plugs of her van. She lifted the hood and got her tools. (RR 1, 27). She was talking to her daughter while she worked. (RR 1, 27-28). Ms. Christian's son-in-law was inside the house. Her daughter's brother-in-law was in the back yard with her. (RR 1, 28).

The events giving rise to this case occurred in the early afternoon. While Ms. Christian worked on her sparkplugs, her neighbor's dog, Silverado was curled up by the fence on the neighbors' side of the fence. (RR 1, 29). The neighbors were Peter[3] and Jorge Sanchez-Marban. The dog belonged to Peter. (RR 1, 29-30). Ms. Christian was a foot and a half from the fence. (RR 1, 30). She looked up from working on her motor and saw Mr. Sanchez-Marban pouring a bottle of water on the dog. She and her daughter looked at each other. Ms. Christian heard a bang and

---

[2] This brief will present the testimony as given at trial. Appellant does not concede that the testimony of the State's two witnesses is true.

[3] Peter's last name does not appear in the record.

looked up. She saw Mr. Sanchez-Marban standing with a tree branch. He was on his side of the fence.[4] (RR 1, 31).

Ms. Christian heard something slam the fence. She turned around. As she did, Mr. Sanchez-Marban hit her in the head with the branch. She grabbed her head and he pushed her backwards. (RR 1, 32). Mr. Sanchez-Marban was still on his side of the fence. Ms. Christian fell backwards. Her daughter called an ambulance, which came and took her to the hospital. (RR 1, 32-33). Mr. Sanchez-Marban hit Ms. Christian twice. The first strike was to her head. Then he pushed her on the chest with the branch. She had closed her eyes, but she saw the branch as she fell. Ms. Christian fell in front of her trailer and landed on some bricks. (RR 1, 33). Her upper back struck the trailer hitch. She felt pain. Ms. Christian had turned and was facing Mr. Sanchez-Marban, and she saw him holding the branch. (RR 1, 34).

Ms. Christian was not sure how far over the fence the branch extended. Mr. Sanchez-Marban did not say anything. He had a smile on his face. Ms. Christian did not know why he struck her. They did not have any prior disagreements. She thought they were friends. (RR 1, 35). She had previously taken him shopping and on a job interview. (RR 1, 35-36). The day before the incident, Mr. Sanchez-Marban soaked Ms. Christian with water from his hose. (RR 1, 36). The following

---

[4] As may be seen in several of the photos in SX4, as well as the videos in SX5, it was a chain-link fence perhaps four feet high. Ms. Christian described it as being a little over waist high. (RR 1, 54).

day, Ms. Christian and her daughter were in their yard smoking. Mr. Sanchez-Marban was standing in his yard wearing shorts and tennis shoes. He had a 9 x 12 rug wrapped around his shoulders. He came running across the yard, took the rug off, and threw it across the fence. The rug hit Ms. Christian and her daughter, knocking them into the trailer. (RR 1, 37).

Diann Christian was disabled.[5] (RR 1, 49). She had fibromyalgia and emphysema, although she continued to smoke. (RR 1, 50). She and her daughter were evicted from their residence on Eureka Drive for being late with the rent, and they resided on U.S. Highway 181 at the time of the trial. (RR 1, 52). Ms. Christian was a widow. Her son-in-law's name was Gilberto. She could not recall whether Mr. Sanchez-Marban's arm went over the fence, and his body was on his own side of the fence. (RR 1, 53). Ms. Christian was standing in front of Mr. Sanchez-Marban during the incident. The first thing she knew, the branch hit her in the head. She did not know whether Mr. Sanchez-Marban swung it. She was not expecting it. (RR 1, 58). Ms. Christian fell backwards when the branch hit her in the chest. (RR 1, 59).

**Shanna Romero Lozano** was Diann Christian's daughter. (RR 1, 72). She and her mother were neighbors of Mr. Sanchez-Marban for four years. (RR 1, 73).

---

[5] Luckily, she was not disabled to the extent that the State could file felony charges of injury to a disabled individual under TEX. PENAL CODE § 22.04(a)(3) (West 2011).

They were on friendly terms until the incident in question, but there were changes in his behavior even prior to that. He watered his yard at odd hours, and began to hose off everything, including buildings and his car. (RR 1, 74). He started blaring music at 6:00 a.m. (RR 1, 74-75). He began leaving wine and drink bottles in the trees and by the fence. Ms. Lozano made a series of videos recordings of Mr. Sanchez-Marban on her cell phone. (RR 1, 75; SX5). The videos were taken from her property. (RR 1, 76). Mr. Sanchez-Marban was on his own property. The police were called several days in a row. (RR 1, 77).

The videos were not made on the day of the assault. They were made the day Mr. Sanchez-Marban sprayed Ms. Christian with his hose. Mr. Sanchez-Marban gave the police a hard time. He told the officers that he did not want them there. He touched the police car and was told not to do so. (RR 1, 78). The video shows Mr. Sanchez-Marban and another neighbor's property, watering everything. (RR 1, 80-81). Mr. Sanchez-Marban told the police that he had previously called them regarding the complainant's family. According to Ms. Lozano, this was true, but it was based on what Ms. Lozano termed a "fiction." (RR 1, 83).

Ms. Lozano testified about the day her mother was assaulted. She recalled that her neighbor's dog, who had seizures, squealed loudly when Mr. Sanchez-Marban poured water on him. (RR 1, 88-89). Ms. Lozano and her mother saw Mr.

Sanchez-Marban approach the dog, but they ignored him. After that, things calmed down for a few minutes, until Mr. Sanchez-Marban went and got the tree branch. (RR 1, 90). He hit the fence with the branch. Ms. Christian, who was closer to the fence than her daughter, moved sideways a couple of feet. (RR 1, 91). Ms. Lozano considered Mr. Sanchez-Marban's behavior to be an act of aggression toward her mother. He took the branch in a swooping motion and hit her on the side of the head. (RR 1, 92).

Ms. Christian lost consciousness after being hit. When she came to, she was disoriented and could barely speak. Ms. Lozano did not say anything to Mr. Sanchez-Marban after the assault. (RR 1, 93). He was smiling when he assaulted Ms. Christian. (RR 1, 94). The branch was perhaps seven feet long and was more like a log than a branch. (RR 1, 97). Ms. Christian had a couple of fractured ribs and was in extreme pain. (RR 1, 98). It took a long time for Ms. Christian to heal. She had pre-existing deteriorating disc disease. (RR 1, 99).

During the subsequent incident with the rug, Ms. Lozano and her mother were outside drinking coffee. Mr. Sanchez-Marban came around the corner. (RR 1, 100). Two ladies who lived on the other side of Mr. Sanchez-Marban were standing there. (RR 1, 100 – 101). Ms. Lozano helped her mother down the stairs, because she was still sore from the branch attack. Mr. Sanchez-Marban was standing in the middle of the yard. He had put on the rug like a Superman cape. It

was a thick rug with tassels on the end. (RR 1, 101). Ms. Lozano had placed two rugs of her own on the fence to give her and her mother some privacy. Mr. Sanchez-Marban came over and tossed the rug he was wearing. He then took Ms. Lozano's two rugs off the fence and tossed them. Ms. Christian again fell to the ground. (RR 1, 102).

Ms. Lozano and her mother were in the same area where the branch incident happened, because they did not think Mr. Sanchez-Marban would do anything like it again. (RR 1, 103). Even after that, there was a third incident. They came home one day and found a big mound of wood piled up against the fence with a cigarette lighter beside it. Ms. Lozano and her mother did not call the police on that one. But they started having their coffee after that on the other side of her mother's trailer. (RR1, 104). Her mother's hospital stay cost somewhere in the vicinity of $9,500 or $9,600, but her co-pay was less than $200. (RR 1, 105). Ms. Lozano and her mother moved the following month. (RR 1, 106).

The entire incident happened so fast that Ms. Lozano could not react and assist her mother. (RR 1, 109). When she and her mother moved away was a combined eviction and a move by choice. (RR 1, 122). She felt that the eviction had something to do with the incident, "but we can't prove it." Mr. Sanchez-Marban is gay, and the landlord to both properties is also gay. The landlord

permitted Mr. Sanchez-Marban to return to the property after having been away from his home. (RR 1, 123).

The landlord knew what happened and he told Ms. Sanchez and Ms. Christian that they did the right thing when they called the police. Ms. Lozano believed that it was possible that that landlord and Mr. Sanchez-Marban had an intimate relationship. (RR 1, 124). However, she did not really think that they had such a relationship. The eviction did happen all of a sudden, and Ms. Lozano remained angry about it. (RR 1, 125).

**Mr. Sanchez-Marban testifies.**

Jorge Sanchez-Marban waived his Fifth Amendment rights and testified in his own behalf. Mr. Sanchez-Marban continued to reside at 227 Eureka Drive. (RR 1, 129). He had resided at that address since the beginning of 2010. Ms. Christian and Ms. Lozano moved next door to him at the end of 2010. (RR 1, 130). They were making up the whole story, and perhaps looking for money. (RR 1, 130-131). Mr. Sanchez-Marban had absolutely no contact with either of them on the day in question. He did not strike them with his fist or a tree branch. (RR 1, 131). Because of the layout of the yards, they could see into each other's back yards. (RR 1, 131-132). There was a pile of wood in Mr. Sanchez-Marban's yard, but he did not take any of that wood to strike Ms. Christian. Ms. Christian pointed a gun at him during an earlier incident, and he tried to avoid her. (RR 1, 132). After the alleged

incident, Mr. Sanchez-Marban had no contact with either of the ladies, in any form. (RR 1, 132-133).

The video, SX5, shows Mr. Sanchez-Marban watering the lawn of the lady across the street from him. He did so at her request. She also rented from the same landlord. Mr. Sanchez-Marban is seen speaking to the police officer in the video. He spoke to the police because they were parked right outside his driveway. He offered any assistance he could give. He did not know why they were there. (RR 1, 133). He did not see Ms. Christian fall that day, but he knew she had a lot of health issues. Mr. Sanchez-Marban was a good friend of Ms. Christian's son-in-law, Gilberto or Roberto.[6] The week prior to the alleged assault, the son-in-law gave him a red thong as a gift, which surprised him. (RR 1, 134). The son-in-law said he would like to see Mr. Sanchez-Marban wearing it. The son-in-law and his wife, Ms. Lozano had a promiscuous relationship, because she was a table dancer. Mr. Sanchez-Marban made a police report on his neighbors on September 7, 2013. (RR 1, 135).

Mr. Sanchez-Marban was a citizen of Spain and Mexico, but not of the United States. He is a permanent U.S. resident. He was in charge of keeping his yard in good shape, and a lot of people really liked his yard. (RR 1, 136). He sprayed water on his house to remove mold. He was drinking water or tea in the

---

[6] According to Ms. Christian, his name was Gilberto. (RR 1, 53, 65).

10

video. (RR 1, 137). He was not wearing a shirt in an attempt to show that he was not carrying a weapon, after the neighbors pointed a gun at him. In addition, it was still hot when the video was made in September. (RR 1, 138). He did not spray Ms. Christian with water. She made that up. (RR 1, 139). Mr. Sanchez-Marban was always careful not to spray his neighbor. The filed a police report the prior weekend because Ms. Christian pointed a gun at him. (RR 1, 140).

He was inside his house when the alleged assault occurred. He did not go out until the police arrived. The part of the video showing him with the mailman depicted him getting his mail. (RR 1, 141). Mr. Sanchez-Marban was not aware that Ms. Christian had fallen until his attorney told him, presumably after the case was filed. The only argument he had with Ms. Christian was on the previous Sunday. (RR 1, 142). The record is not clear about the timeline, but Ms. Christian had sprayed him with pepper spray. (RR 1, 143). The pepper spray incident was the subject of a different police report than the gun incident. (RR 1, 145).

**Conviction and punishment,**

Following argument of counsel, the trial convicted Jorge Isaac Sanchez-Marban of assault – bodily injury. (RR 1, 158). At the brief sentencing hearing, the trial court sentenced Mr. Sanchez-Marban to 11 months in jail, probated for 11 months, plus a $100 fine, restitution, and court costs. (CR, 23-24; RR 1, 162). The trial court certified that this was not a plea bargained case and that Appellant has

the right to appeal. (CR, 25, 26). Both Ms. Sanchez-Marban and his attorney filed timely notices of appeal. (CR, 27, 29-30). The trial court appointed the Bexar County Public Defender's Office to represent Mr. Sanchez-Marban on appeal. (CR, 31). This appeal follows.

## Summary of the Argument

When reviewing a legal sufficiency of the evidence claim in a criminal case, the appellate court will look at the evidence in a light favorable to the verdict, and will determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. In this case, no rational trier of fact could have found beyond a reasonable doubt that Jorge Isaac Sanchez-Marban assaulted Diann Christian.

## Argument

## Appellant's Point of Error (Restated)

The evidence was legally insufficient to support the trial court's finding that Jorge Isaac Sanchez-Marban committed the offense of assault – bodily injury.

An appellate court must always address challenges to the legal sufficiency of the evidence. Such a claim need not be preserved for review at the trial level, and may be raised for the first time on appeal. *Rankin v. State*, 46 S.W.3d 899, 901 (Tex. Crim. App. 2001). Therefore, this Point of Error is properly before this Honorable Court.

Mr. Sanchez-Marban was charged by information with the offense assault – bodily injury. (CR, 8-9). As charged in this case, a person commits the offense of assault – bodily injury if he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE § 22.01(a)(1) (West 2011). "Bodily injury" means physical pain, illness, or any impairment of physical condition. TEX. PENAL CODE § 1.07(a)(8) (West 2011).

Legal sufficiency of the evidence "is an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*. 443 U.S. 307, 316

(1979); *Wilson v. State*, 448 S.W.3d 418, 425 (Tex. Crim. App. 2014). The standard of review is whether, when viewed in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). The appellate court will assess the evidence in the light most favorable to the State. *Wilson*, 448 S.W.3d at 425. The reviewing court will uphold the verdict unless a rational factfinder must have had a reasonable doubt with respect to any of the essential elements of the offense. *Id.* The appellate court will consider all evidence admitted, whether proper or improper. "Every fact need not point directly or independently to the defendant's guilt [citation omitted]. A conclusion of guilt can rest on the combined and cumulative force of all incriminating circumstances." *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony. *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). This rule also applies to bench trials like the one here on appeal. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex. Crim. App. 1978). However, the appellate court does have the duty "to position itself as a final due process safeguard ensuring only the rationality of the factfinder." *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995).

Legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge, one that "accurately sets out the law, is authorized by the indictment,[7] does not necessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The charge should not merely quote the elements of the offense listed in the statute, but should list the statutory elements "as modified by the charging instrument." *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001). "A hypothetically correct charge has its basis in the indictment allegations." *Id.* at 255.

**Application.**

In this case, no rational factfinder could have found that Mr. Sanchez-Marban assaulted Ms. Christian. The information alleged that he struck her with a tree branch (RR 1, 8), thus defining the offense and limiting the conviction to proof of that alone. Thus, the rug incident the following day is irrelevant to this case. The key piece of evidence in this case is State's Exhibit 5, a series of videos (with audio tracks) made by Ms. Lozano on her cell phone. The variance between her testimony and the truths told by the video are astounding. That will be discussed

---

[7] *Malik* obviously applies to misdemeanor cases tried on an information like the current case, inasmuch as *Malik* was itself a misdemeanor case. *Malik*, 953 S.W.2d at 234.

later, but there must first be a discussion of Ms. Christian's testimony.

Her testimony indicates that she did not observe very much. This is essential. Ms. Christian did not actually see what she described to the trial court. Her eyes were closed, and the only thing she actually saw was the branch, as she fell. (RR 1, 33). She did not see the branch strike her. She did not know, even at the time of the trial, whether Mr. Sanchez-Marban actually swung the branch. The best she could say was that she saw him, smiling and holding the branch, but she did not know whether or not he actually swung it at her. She concluded that the tree branch struck her head in the first instance. (RR 1, 58). She said she felt the tree branch hit her chest after that, and she fell backwards. (RR 1, 59). In addition, Ms. Christian was disabled. (RR 1, 49). Among the myriad of ailments that she suffered was deteriorating disc disease of the spine. (RR 1, 49-50). This in and of itself could explain the fall that she took. In sum, the complainant's testimony was so lacking in credibility that no rational factfinder could have given it credit.

When the testimony of Ms. Lozano is factored in, and contrasted with her spontaneous comments recorded on her phone, the conclusion that the evidence was legally insufficient becomes inescapable. Ms. Lozano's comments on the recording were made soon after the events in question. They were unvarnished and not intended for judicial scrutiny. And, because of that, they are more believable than her sworn testimony. Ms. Lozano told the court she was sad and angry at the

17

time. (RR 1, 103). She sounds more vindictive than sad and angry on the recording.

Ms. Lozano's real motivation was probably an attempt to cover up the fact that she assaulted Mr. Sanchez-Marban with pepper spray on the Sunday before the alleged tree branch assault on Ms. Christian. (RR 1, 142-143, 145). During the video, two police officers are seen talking to Mr. Sanchez-Marban down the driveway from Ms. Lozano's position. Mr. Sanchez-Marban apparently told the officers about the pepper spray incident, and Ms. Lozano apparently overheard it. Her comment, recorded by her on her own phone, was: "Oh, he [unintelligible] pepper spray. There's no evidence. He can't prove it. It doesn't matter. I'm not going to admit to it." (SX5, 0:47-1:00). A few seconds later, she said: "I'm not going to admit to it. I'm not going to admit to [unintelligible]. I'm not going to admit to it. I'm not going to [unintelligible]." (SX5, 1:14 – 1:25).

These statements were spontaneous. They were made much nearer to the events in question than her trial testimony. They were obviously not intended for public consumption, especially for judicial, consumption. In sum, they have all the indicia of being true. They lend credence to Mr. Sanchez-Marban's allegation that Ms. Lozano was an aggressor against him, and they show a cover up. They speak eloquently to her motivation to lie in court about what she called a "fiction." (RR

1, 83). After being confronted with these recorded statements, no rational factfinder would have believed this witness.

And, there is more. There appears to be some sort of sexual undercurrent to this case. Mr. Sanchez-Marban was openly gay. (RR 1, 135). The landlord for both houses was also gay. (RR 1, 123). Ms. Lozano denied having and prejudice against gay people (RR 1, 119), and she might have been telling the truth when she said so. However, she was still a bit uncomfortable about it, perhaps because her husband gave Mr. Sanchez-Marban a piece of intimate underwear as a gift, as said that he would like to see Mr. Sanchez-Marban model it. (RR 1, 135-135). This may be the reason why, when Mr. Sanchez-Marban approached the letter carrier on the video, Ms. Lozano said: "Oh, he's talking to the mailman. He wanna fuck the mailman too." (SX5, 2:51 – 2:54). Ms. Lozano denied she said such a thing (RR 1, 120), but it is clear on the recording that she did.

All of this shows a string bias against Mr. Sanchez-Marban. The finder of fact at the trial resolves issues of credibility. *Barnes*, 876 S.W.2d at 321. However, when no rational factfinder could have found the elements of the offense, the appellate court must assure that the decision is rational. *Matamoros*, 901 S.W.2d 474. In this case, no rational trier of fact could have found Mr. Sanchez-Marban guilty.

**Harm analysis.**

Legal sufficiency of the evidence invokes constitutional issues. *Gollihar*, 46 S.W.3d at 245-46. If the record reveals constitutional error that is subject to harmless error review, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a) (West 2015). The error complained of here contributed to Mr. Sanchez-Marban's conviction. The testimony of one – or both – of the eyewitnesses was so irrational as to cast a shadow on the propriety of the conviction. "[T]he remedy for a finding of legally insufficient evidence on appeal is acquittal." *Gollihar,* 46 S.W.3d at 246. Therefore, the judgment of conviction should be reversed, and a judgment of acquittal should be rendered.

## Conclusion and Prayer

WHEREFORE, PREMISES CONSIDERED, the Appellant prays the Court of Appeals to uphold the point of error, reverse the judgment of conviction and render an order of acquittal.

Respectfully submitted,


/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender
Paul Elizondo Tower
101 W. Nueva St., Suite 310
San Antonio, Texas 78205
(210) 335-0701
FAX (210) 335-0707
mrobbins@bexar.org
Bar No. 16984600
ATTORNEY FOR APPELLANT

## Word Count Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(1) & (i)(2)(B) (West 2015), I hereby certify that the word count, from the beginning of the Statement of Facts until, but excluding, the signature block, is 4,174. The total word count is 5,418. The Appellate Public Defender's Office uses Microsoft Word 2010.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Brief For Appellant has emailed to the Bexar County District Attorney's Office, Appellate Division, Paul Elizondo Tower, 101 W. Nueva St., Suite 370, San Antonio, Texas 78205, on September 1, 2015.

/s/ *Michael D. Robbins*
MICHAEL D. ROBBINS
Assistant Public Defender