# Supreme Court of Texas

No. 20-0977

Ex parte K.T.

On Petition for Review from the
Court of Appeals for the Second District of Texas

~consolidated for oral argument with~

No. 21-0075

Ex parte C.F.

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**Argued January 13, 2022**

JUSTICE YOUNG delivered the opinion of the Court, in which Chief Justice Hecht, Justice Lehrmann, Justice Devine, Justice Blacklock, Justice Busby, Justice Bland, and Justice Huddle joined.

JUSTICE BOYD filed a dissenting opinion.

These two cases, which we consolidated for briefing and argument, involve unrelated respondents—K.T. and C.F.—who were

acquitted of driving while intoxicated, or DWI. Both respondents seek expunction of the records relating to their arrests. Texas law authorizes such expunctions unless "the offense for which the person was acquitted arose out of a criminal episode," Tex. Code Crim. Proc. art. 55.01(c), and defines "criminal episode" as "the commission of two or more offenses" under specified circumstances. Tex. Penal Code § 3.01. Each respondent had a previous DWI conviction from at least three years before the arrest that led to acquittal.

The State must make two separate showings to block respondents' requested expunctions.[1] First, to reach the minimum "commission of two . . . offenses" required for a criminal episode to exist, *id.*, the State must establish that each respondent's second DWI arrest qualifies as the "commission" of that offense, despite the resulting acquittals. Second, the State must show that each respondent's prior conviction and later arrest were part of a common "criminal episode"— specifically, that two arrests for DWI are necessarily part of the same criminal episode even when the underlying events have no other relation to each other.

We hold that an acquittal cannot qualify as the "commission" of an offense. With only one "commission" for each respondent, there can be no "criminal episode" for either. Without a criminal episode, the exception to expunction does not apply. We therefore affirm the judgments below on this ground without reaching the second issue, which we reserve for a future case.

_____

[1] The petitioner in both cases, which we call "the State," is the Texas Department of Public Safety.

2

# I

The material facts in each case are undisputed and essentially identical: Respondents K.T. and C.F. each has one misdemeanor DWI conviction and, more than three years later, one subsequent misdemeanor DWI acquittal.[2] Both respondents filed petitions in the relevant trial court requesting expunction of the arrest records pertaining to their acquittals. Both cases present the same question of law relating to the availability of expunction under these circumstances. Separate trial courts ordered expunction of each respondent's records despite the State's objections. In *K.T.*, a divided panel of the Second Court of Appeals affirmed.[3] In *C.F.*, the en banc Fifth Court of Appeals affirmed over a dissent.[4]

# II

As we have repeatedly recognized, there is no constitutional right to expunction. *Ex parte R.P.G.P.*, 623 S.W.3d 313, 316 (Tex. 2021); *In re State Bar of Tex.*, 440 S.W.3d 621, 624 (Tex. 2014) (orig. proceeding). The cases before us therefore present only a question of statutory construction. The interaction of three provisions from two Texas statutes determines whether those in respondents' position may expunge records relating to charges for which they have been acquitted.

First, the Code of Criminal Procedure provides a general entitlement to the expunction of arrest records when someone is later

---

[2] At oral argument, counsel for C.F. moved to recaption the case to use only C.F.'s initials. We now grant that motion, which we carried with the case.

[3] 612 S.W.3d 111 (Tex. App.—Fort Worth 2020).

[4] 613 S.W.3d 276 (Tex. App.—Dallas 2020).

3

acquitted:

> A person who has been placed under a custodial or noncustodial arrest for commission of either a felony or misdemeanor is entitled to have all records and files relating to the arrest expunged if the person is tried for the offense for which the person was arrested and is acquitted by the trial court, except as provided by Subsection (c) . . . .

Tex. Code Crim. Proc. art. 55.01(a)(1)(A) (internal punctuation omitted).

Next, the exception to this general entitlement appears in article 55.01(c), which provides that

> [a] court may not order the expunction of records and files relating to an arrest for an offense for which a person is subsequently acquitted, whether by the trial court, a court of appeals, or the court of criminal appeals, if the offense for which the person was acquitted arose out of a criminal episode, as defined by Section 3.01, Penal Code, and the person was convicted of or remains subject to prosecution for at least one other offense occurring during the criminal episode.

Finally, courts cannot apply the exception without confirming that, under the Penal Code's definition, a "criminal episode" has been formed in the first place:

> In this chapter, "criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
> (2) the offenses are the repeated commission of the same or similar offenses.

Tex. Penal Code § 3.01.

When the State invokes the statutory exception to block access to

4

expunction for someone who has been acquitted of an offense, these statutory provisions require the State first to establish that a "criminal episode" has in fact been formed. If so, the State must show that the acquittal at issue "arose out of" that "criminal episode."

## III

We begin with whether a "criminal episode" has been formed in the first place. It is undisputed that a "criminal episode" cannot exist without at least two qualifying "offenses." It is likewise undisputed that the only potential offenses that could qualify here are each respondent's (1) single prior DWI conviction and (2) single DWI arrest that led to acquittal. The question before us is whether, as a matter of law, a single conviction and a single acquittal are legally sufficient to establish a "criminal episode" under Penal Code § 3.01.

## A

### 1

The State contends that one conviction and one acquittal are sufficient. Most of the State's arguments, however, attack respondents' contention that a criminal episode requires two *convictions*. As we describe in greater detail below, we agree with the State that a final conviction is not necessary to treat charged conduct as an "offense" when determining whether the article 55.01(c) exception to expunction—which incorporates § 3.01's definition of criminal episode—applies. Article 55.01(c)'s reference to "the offense for which the person was acquitted" would be incoherent if "offense" meant "conviction," for one cannot be *convicted* of an offense if one has been *acquitted* of that offense.

5

But rejecting respondents' constrained reading of "offense" to mean only convictions does not equate to embracing the State's expansive reading that "offense" encompasses both acquittals *and* convictions. Article 55.01(c) does not separately define the term "criminal episode" but instead expressly incorporates the definition provided in Penal Code § 3.01. Section 3.01, in turn, requires the "*commission* of two or more offenses" to establish a "criminal episode." (Emphasis added.)

The Penal Code does not define the term "commission," so the ordinary meaning of that term governs our analysis. "Commission" is the "[a]ct of committing, doing, or performing; act of perpetrating . . . ." *Commission*, Webster's International Dictionary (2d ed. 1953). Common sense and ordinary English usage both rebel at allowing the State to treat someone as the committer, doer, performer, or perpetrator of a crime after a jury's verdict of acquittal.[5] With respect to their later arrests, the State did not meet its burden to show that K.T. and C.F. committed, did, performed, or perpetrated the offense of driving while intoxicated beyond a reasonable doubt. The right to trial by jury, and the sanctity of the resulting verdicts, are fundamental to our legal system. Absent clear language to the contrary, we cannot agree that the legislature would define "criminal episode" as the "commission" of multiple offenses if it wanted to include offenses where a jury has acquitted the defendant. Tex. Penal Code § 3.01.

The State's approach would do more than subvert ordinary

---

[5] K.T. was acquitted in a jury trial. C.F. had the right to a trial by jury, but instead accepted a bench trial, at which he was acquitted.

6

language like "commit" or "commission." It would lead to results that would startle not just legislators but ordinary Texans. The State has candidly acknowledged, for example, that its reading would require Texas courts to deem an unquestionably erroneous arrest—even one based on admittedly mistaken identity—as establishing the "commission" of an "offense" by the wrongly arrested citizen. Indeed, a false arrest springing from malice would constitute the "commission" of an offense *by the victim of the false arrest*, even if the government immediately corrects the error and punishes the officials who caused that arrest.

The legislature's use of "commission" forecloses such a scenario. That term's plain meaning focuses on the actions of the alleged perpetrator, not the actions of third parties like the law-enforcement officer doing the arresting. When the State fails to show that the arrestees committed particular conduct, such now-rejected allegations may not be treated as conduct that the arrestees *did* commit.

Article 55.01(a)(1)(A) also uses "commission" in a way that supports our reading. That provision authorizes expunction for someone "who has been placed under . . . arrest *for commission of* [a crime]" and who then is acquitted. (Emphasis added.) Being "arrest[ed] *for commission*" of a crime sets out the reason that someone needs expunction—he was arrested but then was acquitted. The initial accusation is *why* he was arrested. Penal Code § 3.01, however, is tethered to the *commission* of a crime (which is defeated upon acquittal), not merely an "arrest *for* commission" of a crime.

Article 55.01 is thus premised on acquittals *not* being called

7

"committed" offenses. As we discuss below, article 55.01(c)—the exception to expunction—accordingly does not even use the word "commission," but describes only "an offense for which a person is subsequently acquitted." The absence of "commission" is significant, and confirms our reading, because the whole point of article 55.01(c) is to bar expunction of records related to "offenses" that, because they led to acquittal, were *not* shown to have been committed.

**2**

The State claims that we must embrace its unlikely interpretation of "commission" under § 3.01 because article 55.01(c) otherwise becomes a "nullity." Specifically, the State argues that "for article 55.01(c) to apply, the offense for which the defendant is acquitted must have been 'committed'—otherwise, it could not arise from a criminal episode as defined by section 3.01" since an offense that is not committed cannot "arise" from a criminal episode. We cannot embrace this reading because it misapprehends how § 3.01 and article 55.01 interact.

First, § 3.01 has but one role in expunction cases: to delineate whether a "criminal episode" exists. That question turns in part on identifying "the commission" of multiple offenses. But once a criminal episode *has* been formed, it does not matter whether an offense was "committed." Said differently, the State *can* block an expunction of an acquittal (which, as we discuss below, indeed can "arise from" an already-identified criminal episode). Doing so is the whole point of article 55.01(c). Once § 3.01 is satisfied, in other words, article 55.01(c) takes over—and article 55.01(c) does not address whether an offense

8

was "committed."

Both text and context illustrate this relationship between the two provisions. Article 55.01(c) expressly conditions *its* use of "criminal episode" on how *the Penal Code* uses that term: unless the State can show "a criminal episode, *as defined by Section 3.01, Penal Code*," the exception to expunction is impermissible. (Emphasis added.) The relevant language in § 3.01 was enacted in 1973.[6] Article 55.01(c), which was enacted in 1999,[7] does not *modify* § 3.01's language, but *borrows* it. Article 55.01(c) directs courts to import § 3.01's meaning into the expunction context—not to export expunction-specific meaning into § 3.01. The way to read these statutes together is to follow the legislative command to take § 3.01 as we find it.

Our analysis could end merely with the legislature's express command that courts not impose a bespoke reading on § 3.01 based on expunction-related concerns. But the legislature also had a very good reason for that command: to avoid interference with the substantive criminal law. After all, while article 55.01(c) *exclusively* concerns expunction, § 3.01 is an important *criminal-law* statute that contains the sole definition in Chapter 3 of the Penal Code, which is titled "Multiple Prosecutions." The tail would wag the dog if article 55.01(c) could transform the meaning of § 3.01. Caution is called for: "'[A]n expunction proceeding is civil in nature,' yet it is in the criminal law

_____

[6] *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 891 (codified at Tex. Penal Code § 3.01).

[7] Act of June 18, 1999, 76th Leg., R.S., ch. 1236, § 1, 1999 Tex. Gen. Laws 4279, 4280 (codified at Tex. Code Crim. Proc. art. 55.01).

where the consequences of our decision will be keenly felt." *Ex parte R.P.G.P.*, 623 S.W.3d 313, 334 (Tex. 2021) (Bland, J., dissenting) (alteration in original) (quoting *State v. T.S.N.*, 547 S.W.3d 617, 619 (Tex. 2018)).

Hence, it is not surprising that the legislature itself emphasized that, however § 3.01 defines "criminal episode," article 55.01(c) must use *that* definition. That definition could change, of course, for reasons wholly unrelated to expunction. The legislature or the courts could modify § 3.01's meaning or scope with criminal prosecutions and not expunction in mind. If that happens, article 55.01(c) includes a backstop. Beyond requiring the State to show a "criminal episode" as defined in § 3.01, article 55.01(c) has an independent requirement of its own: that "the person was convicted of or remains subject to prosecution for at least one other offense occurring during the criminal episode."

This belt-and-suspenders approach—relying on § 3.01 but providing a backstop—does not make anything a nullity or create any surplusage. To the contrary, article 55.01(c)'s language ensures that *at least one* conviction or unresolved charge is required to bar expunction of records relating to an acquittal *no matter what* happens vis-à-vis the details of § 3.01. Article 55.01(c)'s requirement is less restrictive than § 3.01's current definition, but it still is an independent statutory condition ready to take effect if necessary. Allowing for such a contingency is comparable to retaining a state constitutional provision even though the U.S. Supreme Court has given an analogous federal

10

constitutional provision a more expansive scope.[8]

Our holding today addresses only the very first step of the analysis relating to the exception to expunction—the creation of the criminal episode under Penal Code § 3.01. Specifically, we hold that an acquittal cannot be leveraged into *forming* a criminal episode because an acquittal does not qualify as the "commission" of an "offense." Once the State properly identifies a criminal episode, however, § 3.01 does not play any further role in the expunction analysis.

Finally, the State is also mistaken to contend that offenses leading to acquittal cannot "arise from" a criminal episode under the ordinary definition of "commission." Acquitted offenses can still "arise from" the two categories of criminal episodes that § 3.01 describes. Imagine a defendant charged with robbing three banks during a spree, who is convicted of two but acquitted of the third. Or consider a defendant charged with robbing a house, kidnapping an occupant of the house, and arson of the house; he might likewise be convicted of the first two but acquitted of the third. In both scenarios, the third offense was not "committed." But that third offense nonetheless cannot be expunged under article 55.01(c) *because* that acquitted offense "arose from" the same criminal episode. Our recourse to the ordinary English meaning of the statutory text may allow more expunctions than the State prefers, but that hardly renders article 55.01(c) or any other provision a "nullity."

---

[8] State constitutional provisions still independently protect the right at issue even if federal law provides *more* protection. And if the Supreme Court's interpretation of the federal Constitution changes, the state Constitution, which may have appeared dormant, will quickly prove that it was not as superfluous as it may have seemed.

For all of these reasons, we must also respectfully disagree with our dissenting colleague. We perceive no surplusage or meaninglessness in article 55.01(c). But even if we were less sure, the proposed cure is worse than the disease. "Put to a choice . . . , a court may well prefer ordinary meaning to an unusual meaning that will avoid surplusage." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012). Reading "commission" of an offense to mean "acquittal" of that offense would, to put it mildly, be "unusual." "[W]ith careful regard to context," which we have sketched above, we believe that sounder "judgment and discretion" compel us to read the statutes as we do. *Id.*[9]

\* \* \*

To block the expunction of respondents' arrest records, the State must show the "commission" of *at least* two offenses to establish a criminal episode. We hold that the State cannot count as a "commission" any "offense" for which respondents have been acquitted. Without the acquitted charges, the State has only one offense for each respondent, which is legally insufficient to form a "criminal episode." As a matter of

---

[9] We take no position on the underlying policy debate about how generous the expunction entitlement *should* be. The legislature certainly could conclude that once a person is convicted of an offense, the right to expunction must yield to the public's interest in access to subsequent arrest records—even for arrests that lead to acquittal, are wholly unrelated to the initial conviction, or even turn out to be wholly unfounded. The only question fit for the judiciary is to discern the policy that the legislature *has* enacted. We reiterate that the legislature may freely amend the statute. It can narrow (or broaden) its scope by amending the law—or by replacing it with a wholly new expunction statute.

law, therefore, the statutory exception does not apply.[10]  K.T. and C.F. are thus both entitled to the expunctions that they have sought.

## B

Respondents agree that an acquittal is insufficient to form a criminal episode but would take the additional step of equating an offense's "commission" with an offense's *conviction*.  We cannot go so far.  It certainly is true that one convicted of a crime has "committed" that crime.  But the statute is structured around a middle ground between acquittal and conviction.  "Commission," as the statute uses that term, also encompasses offenses for which a person still *can be* prosecuted—that is to say, where a conviction remains possible.  Penal Code § 3.02(a), which concerns joinder of prosecutions, reflects this point.  That provision states that a "defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode."

The statutory structure precludes respondents' reading.  After defining "criminal episode" in § 3.01, the Penal Code immediately begins

---

[10] To the extent that lower-court decisions that deny expunctions have relied on an acquittal to form the criminal episode, those decisions are disapproved.  *See, e.g.*, *In re J.D.R.*, No. 01-20-00161-CV, 2022 WL 551276, at *1 (Tex. App.—Houston [1st Dist.] Feb. 24, 2022, no pet.); *Ex parte M.B.F.*, No. 10-20-00053-CV, 2022 WL 555019, at *1 (Tex. App.—Waco Feb. 23, 2022, no pet.); *Mitchell v. State*, No. 09-20-00060-CV, 2020 WL 6494209, at *1 (Tex. App.—Beaumont Nov. 5, 2020, pet. denied); *Ex parte R.A.L.*, No. 04-19-00479-CV, 2020 WL 557542, at *1 (Tex. App.—San Antonio Feb. 5, 2020, pet. denied); *Ex parte F.T.K.*, No. 13-16-00535-CV, 2018 WL 2440545, at *1 (Tex. App.—Corpus Christi–Edinburg May 31, 2018, no pet.); *In re Expunction of J.B.*, 564 S.W.3d 436 (Tex. App.—El Paso 2016, no pet.); *Addicks v. State*, No. 03-06-00114-CV, 2007 WL 844872, at *1 (Tex. App.—Austin Mar. 21, 2007, no pet.); *Ex parte Baldivia*, No. 07-05-0046-CV, 2007 WL 63373, at *1 (Tex. App.—Amarillo Jan. 10, 2007, no pet.).

to apply that term in § 3.02 in a way that eliminates the conviction-only definition that respondents advance. As § 3.02 illustrates, offenses in as early as the prosecution stage can form a single criminal episode, so a "criminal episode" for that purpose must be able to exist before *any* convictions are even possible.[11]

Offenses still subject to prosecution have not reached a particular conclusion—conviction, acquittal, or anything else. Thus, while an *acquittal* cannot qualify as a predicate for a "criminal episode," charged conduct that has not yet led to acquittal can form part of a "criminal episode" and thus trigger Penal Code § 3.02's authorization of "a single criminal action" for multiple charged offenses. These offenses are within the definition of a "criminal episode" for joint prosecution until, as a matter of law, that possibility has been negated.[12]

Respondents' reading would require expunction where the statute forbids it. For example, if only convictions can form a criminal episode, someone could expunge an acquitted offense even though two other offenses from the same incident or course of conduct remain subject to prosecution. If those prosecutions resulted in convictions, and if they formed a criminal episode, the acquittal could squarely fall within article 55.01(c)'s exception to expunction (even though the State could

---

[11] Article 55.01(c) of the Code of Criminal Procedure confirms this reading by stating that an acquitted offense cannot be expunged if "the person was convicted of *or remains subject to prosecution* for at least one other offense occurring during the criminal episode." (Emphasis added.) *See supra* at 10–11.

[12] This potential is what keeps Penal Code § 3.01 tethered to the actual "commission" of a crime.

not use that acquittal to establish the criminal episode's *formation*). When there is a potential conviction, in other words, the lack of a conviction poses no barrier to that charge arising from a criminal episode.[13]

## IV

Much of the State's argument in the cases before us has focused on the *second* question, on which the State must also prevail to warrant denial of expunction. That question asks whether two DWI offenses, separated by over three years, are sufficiently linked to form a common "criminal episode" under Penal Code § 3.01(2).[14] That provision defines "criminal episode" as "the commission of two or more offenses" when "the offenses are the repeated commission of the same or similar offenses."[15]

We decline to resolve this question. We acknowledge that this issue could provide an independent basis for our holding because, even if we had held that the DWI acquittal *could* qualify as the "commission" of an offense, a "criminal episode" would still not exist if the original conviction and the subsequent acquittal were insufficiently linked to

---

[13] We need not address today whether a charged offense leading to a disposition other than a conviction or an acquittal, such as deferred adjudication, can be a part of a criminal episode under § 3.01.

[14] The parties agree that, if a criminal episode exists here, it is under Penal Code § 3.01(2).

[15] As originally enacted in 1973, § 3.01 included *only* what now is codified as § 3.01(2)—"the repeated commission" of an offense. The provision currently codified as § 3.01(1)—involving offenses in "the same transaction" or "constitut[ing] a common scheme or plan"—was added in 1987. *See* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 891 (codified at Tex. Penal Code § 3.01); Act of May 22, 1987, 70th Leg., R.S., ch. 386, § 1, 1987 Tex. Gen. Laws 1900 (codified at Tex. Penal Code § 3.01).

qualify as "the repeated commission" of DWI. We also recognize that the Fifth Court, sitting en banc in *C.F.*, relied on this ground,[16] which remains the law in that appellate district, while other courts of appeals have rejected that reading.[17]

We nonetheless conclude that it is more prudent to await another case that presents the issue than to address the existing conflict now. The outcome of today's disputes would not change regardless of how we resolved this second question. Moreover, respondents' rationale for affirmance did not contest the State's reading of § 3.01(2) or defend the Fifth Court's ruling in C.F.'s favor on this ground. The State understandably did not press as far as it might have in defending its own position; it was deprived of adversarial briefing that challenged whether § 3.01(2) includes any limitation other than that the committed offenses be similar. Finally, the question is important and will affect many other Texans, so we are wary of addressing it under these circumstances. We therefore will await another case in which this

---

[16] 613 S.W.3d at 282–84 (advancing multiple reasons that a "criminal episode" under § 3.01(2) cannot be formed from events that share no links other than being the same charge); *cf. id.* at 289–90 (Evans, J., dissenting) (disputing the majority's argument on this point).

[17] When considering the entitlement to expunction, several courts have concluded that offenses require no temporal or factual nexus to form or arise from a common "criminal episode" under § 3.01(2). *See, e.g., State v. D.D.M.*, No. 14-20-00426-CV, 2022 WL 906002, at *4 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, no pet. h.); *In re J.D.R.*, No. 01-20-00161-CV, 2022 WL 551276, at *4 (Tex. App.—Houston [1st Dist.] Feb. 24, 2022, no pet.); *Ex parte M.B.F.*, No. 10-20-00053-CV, 2022 WL 555019, at *2 (Tex. App.—Waco Feb. 23, 2022, no pet.); *In re T.D.N.*, 620 S.W.3d 433, 439 (Tex. App.—El Paso 2020, no pet.); *Ex parte R.A.L.*, No. 04-19-00479-CV, 2020 WL 557542, at *2 (Tex. App.—San Antonio Feb. 5, 2020, pet. denied).

question proves dispositive and is the focus of the parties' briefing.

We emphasize, however, that we take no position and give no hint regarding the merits of the issue that we decline to address today. Substantial arguments support both positions—the one advanced by the State and the one advanced by the en banc majority in the Fifth Court. We will consider them if and when a case implicating those arguments comes to us.[18]

## V

Respondents have established their entitlement to expunction. No exception applies. The judgments below are accordingly affirmed.

Evan A. Young
Justice

**OPINION DELIVERED:** May 13, 2022

---

[18] The dissent's brief discussion of this issue, of course, does not predict how the Court will ultimately rule. We agree with the dissent on one notable point, however—the relevance of the Court of Criminal Appeals' cases. *See post* at 7–8 (quoting *Wilson v. State*, 448 S.W.3d 418, 424 (Tex. Crim. App. 2014)). *Wilson* addressed Penal Code § 42.07(a)(4), not § 3.01; we express no view as to whether that context is portable or instructive. But we agree that courts and parties should pay close attention to the Court of Criminal Appeals' case law in this context because—as noted above—what constitutes a "criminal episode" is primarily relevant in criminal cases.