# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00427-CR

---

**James Earl, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CR-18-501959, THE HONORABLE DIMPLE MALHOTRA, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

James Earl appeals the trial court's deferral of adjudication of guilt and supervision order, arguing that Texas's electronic harassment statute (a subsection of the harassment statute) is unconstitutionally overbroad because it punishes a substantial amount of protected speech in relation to its legitimate sweep. Earl acknowledges the Texas Court of Criminal Appeals upheld the subsection against First Amendment challenges in *Ex parte Barton*, 662 S.W.3d 876 (Tex. Crim. App. 2022), and *Ex parte Sanders*, 663 S.W.3d 197 (Tex. Crim. App. 2022), but argues those cases were wrongly decided for the reasons set out in Presiding Judge Keller's dissents. Earl further argues that the holdings do not survive *Counterman v. Colorado*, 600 U.S. 66 (2023), or the Texas Legislature's adoption of Texas Penal Code section 42.07(a)(8), *see* Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 386. We affirm.

# BACKGROUND

Because Earl makes a facial challenge to section 42.07(a)(7), the specific facts of the case are irrelevant. *Ex parte Lo*, 424 S.W.3d 10, 14, n.2 (Tex. Crim. App. 2013). We nevertheless set out the probable cause affidavit for context:[1]

> 12.19.18/0900, Victim, [A.S.], came to a scheduled interview with me, after reporting her ex-boyfriend, Mr. Earl was [s]talking her. During this interview, [s]he told me on 11.15.18, she was on the phone with Mr. Earl when she asked him to stop contacting her. Since then he has continued to contact her, and assaulted her on 12.11.18 when he came to her residence and refused to let her shut the door.
>
> During the interview, I had her email Mr. Earl, "I want you to cease all communication with me via phone, text messages, emails and any social media platform. Do not contact me anymore, [A.S.]."
>
> 12.19.18/12:21 PM, she received a text from him stating "This is why I was checked out for so long in our relationship, why I didn't want to go deeper with you. I knew you would do this [A.S.], you're trash." She received another text from him at 17:35 PM, stating "You are a horrible human and deserve the way [your] body is falling apart. Rot in a hell you vile piece of shit."
>
> Then at 17:47, she received another text stating "You're a liar, a cheater, and hopefully soon to be a cripple. Fuck you, you terrible person."
>
> Not only has Mr. Earl's behavior alarmed [A.S.], but it's also annoyed her and caused her to fear for her safety and life.
>
> * * *
>
> This offense does involve Family Violence as the victim and suspect are related by: Dating Relationship.

The information, tracking the applicable statute, alleged that Earl "on or about the 19th day of December, 2018, with the intent to harass, annoy, alarm, abuse, torment, and embarrass another,

---

[1] *See Ex parte Lowry*, 693 S.W.3d 388, 391 (Tex. Crim. App. 2024) (doing same).

sent repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, and offend [A.S.]."

Earl filed a combined pretrial application for habeas corpus and motion to quash challenging the statute as facially unconstitutional under the First Amendment. The State filed an answer and proposed findings and conclusions, asserting that *Barton* and *Sanders* controlled the outcome. The trial court adopted the State's findings and conclusions and denied the combined application and motion. Earl thereafter pled no contest to electronic harassment in exchange for one year of deferred adjudication, reserving the right to appeal the constitutionality of the statute.

## ANALYSIS

### *The Electronic Harassment Statute as Overbroad*

Earl argues that the electronic harassment statute punishes so much protected speech that it cannot be applied to anyone, including him.

#### *Applicable Law and Standard of Review*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." *United States v. Hansen*, 599 U.S. 762, 769 (2023). Generally, this means that the government cannot restrict expression because of its message, its ideas, its subject matter, or its content. *United States v. Stevens*, 559 U.S. 460, 468 (2010). However, there are some "well-defined and narrowly limited classes of speech" that have been recognized as falling outside the protection of the First Amendment. *Id*. at 468–72. These include child pornography, obscenity, defamation, fighting words, incitement, true threats of violence, fraud, and speech integral to criminal conduct. *Id*. Speech not within one of these narrowly defined categories is

3

protected under the First Amendment, even if a legislature "concludes certain speech is too harmful to be tolerated." *Brown v. Entertainment Merchs. Ass'n*, 564 U.S. 786, 791 (2011) ("new categories of unprotected speech may not be added to the list by a legislature that concludes certain speech is too harmful to be tolerated"). Such restrictions of speech are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). But even if a law restricting speech were to satisfy strict scrutiny, it may still be facially overbroad in violation of the First Amendment. *Stevens*, 559 U.S. at 472–73; *Ex parte Nuncio*, 662 S.W.3d 903, 920 (Tex. Crim. App. 2022). In the First Amendment context, a court may invalidate a law as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. *Stevens*, 559 U.S. at 473.

"An overbreadth challenge is unusual." *Hansen*, 599 U.S. at 769. "For one thing, litigants have standing to assert the constitutional rights of third parties." *Id*. "For another, litigants do not have to establish that no set of circumstances exists under which the statute would be valid." *Id*. Instead, the "overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *Id*.

The Supreme Court has "justified this doctrine on the ground that it provides breathing room for free expression." *Id*. "Overbroad laws may deter or chill constitutionally protected speech, and if would-be speakers remain silent, society will lose their contributions to the marketplace of ideas." *Id*. at 769–70 (cleaned up). "To guard against those harms, the overbreadth doctrine allows a litigant (even an undeserving one) to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak." *Id*. at 770. "If the

4

challenger demonstrates that the statute prohibits a substantial amount of protected speech relative to its plainly legitimate sweep, then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Id*. (cleaned up). "Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed." *Id*. (cleaned up). "To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id*. "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do— case-by-case." *Id*.[2]

Whether a statute is facially constitutional is a question of law we review de novo. *Ex parte Lowry*, 693 S.W.3d 388, 406 (Tex. Crim. App. 2024).

*Application*

The statute at issue reads: "A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." Tex. Penal Code § 42.07(a)(7). The statute defines "electronic

---

[2] In *Owens v. State*, ___S.W.3d ___, No. PD-0075-24, 2025 WL 1587690 (Tex. Crim. App. June 4, 2025), the Court found section 42.07(a)(7) unconstitutional as applied to Owens, who had been convicted of harassment for sending thirty-four communications to his former therapist. He had sent the messages via her publicly accessible commercial accounts and done so over a three-month period. *Id*. at *4-6. The Court specifically noted that in *Barton* and *Sanders*, it had upheld the facial constitutionality of the statute on the grounds that it prohibits non-speech conduct, and stated, "The question before us now is narrower: was the statute unconstitutional as it was applied to [Owens]?" *Id*. at *3-4. The Court concluded that it was. *Id*. at *9. The State had prosecuted Owens based on the content of his speech in circumstances where (1) "there was no invasion to the home"; (2) no "captive audience"; and (3) no "invasion of substantial privacy rights in an essentially intolerable manner." *Id*. at *7. Earl has not raised an as-applied challenge here.

5

communication" as "a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system" and states the term includes: "communication initiated by electronic mail, instant message, network call, or facsimile machine" and "a communication made to a pager." *Id*. § 42.07(b)(1)(A)(B). In *Scott v. State*, the Court of Criminal Appeals upheld another, and nearly identical, subsection of the harassment statute, section 42.07(a)(4), against a First Amendment overbreadth challenge—finding that the subsection targets noncommunicative conduct. 322 S.W.3d 662, 670 (Tex. Crim. App. 2010), *abrogated by Wilson v. State*, 448 S.W.3d 418 (Tex. Crim. App. 2014). That subsection provides, "(a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." Tex. Penal Code § 42.07(a)(4). The Court noted the text requires that the actor intend to inflict emotional distress and to act in a manner likely to do so but does not require that the actor use spoken words at all. *Id*. at 670. The Court held that to the extent that it applies to communicative conduct, that communicative conduct is not protected by the First Amendment because it invades the substantial privacy interests of the recipient in an essentially intolerable manner. *Id*. Finding the statute regulates non-speech conduct, the Court overruled the overbreadth challenge. *Id*.

In 2020, this Court upheld section 42.07(a)(7) against an overbreadth challenge, relying on *Scott*, and two prior unpublished opinions from this court. *Ex parte McDonald*, 606 S.W.3d 856, 860 (Tex. App.—Austin 2020, pet. ref'd). And in *Barton* and *Sanders*, the Court of Criminal Appeals relied on *Scott* to do the same thing, reasoning:

6

- the gravamen of the section 42.07(a)(7) offense is the sending of repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another;

- speech is not necessary for commission of the offense; the statute is equally violated by the repeated sending of communications containing expressive speech as it is by the repeated sending of communications containing no speech at all;

- even accepting that a person who violates section 42.07(a)(7) may harbor, alongside an intent to harass, an additional intent to engage in the legitimate communication of ideas, that fact does not convert non-expressive conduct into protective expressive conduct; the First Amendment affords no protection to communicative conduct whereby one individual invades the substantial privacy interests of another in an essentially intolerable manner;

- because the statute proscribes non-speech conduct, it does not implicate the protections of the First Amendment, although elements of speech may be employed to commit the offense; and

- on its face, section 42.07(a)(7) does not implicate and does not violate the First Amendment of the United States Constitution.

*Barton*, 662 S.W.3d at 883–84; *Sanders*, 663 S.W.3d at 215–16.[3]

Earl argues that Presiding Judge Keller got it right because the statute encompasses a truly enormous amount of speech and statements made with a disfavored

---

[3] The applicable version of the statute is the 2017 version. Act of May 26, 2017, 85th Leg., R.S., ch. 522, §§ 13, 14, 2017 Tex. Gen. Laws 1400, 1407. Although the Texas Legislature has twice amended the statute since then, this subsection has not changed. Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 386; Act of May 24, 2023, 88th Leg., R.S., ch. 839, § 7, 2023 Tex. Gen. Laws 2614, 2619; Act of May 18, 2023, 88th Leg., R.S., ch. 1118, § 1, 2023 Tex. Gen. Laws 3472, 3473. The versions of the sub-statute at issue in the *Barton* (2001) and *Sanders* (2013) cases were virtually identical to the 2017 versions. Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 1, 2001 Tex. Gen. Laws 2795, 2796; Act of May 24, 2013, 83rd Leg., R.S., ch. 1278, § 1, 2013 Tex. Gen. Laws. 3231, 3231. But the definition of "electronic communication" was narrower. It was defined as "a transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system" and to include "a communication initiated by electronic mail, instant message, network call, or facsimile machine" and "a communication made to a pager." Act of May 26, 2001, 77th Leg., R.S., ch. 1222, § 1, 2001 Tex. Gen. Laws 2795, 2796; Act of May 24, 2013, 83rd Leg., R.S., ch. 1278, § 1, 2013 Tex. Gen. Laws. 3231, 3231.

harassing intent are still protected unless they fall into a historically recognized category of unprotected speech. But we are bound by *Barton*, *Sanders*,[4] and *McDonald*. Texas courts follow vertical stare decisis (lower courts must follow the precedents of all higher courts) and horizontal stare decisis (three-judge panels must follow materially indistinguishable decisions of earlier panels of the same court unless a higher authority has superseded that prior decision). *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022).

Earl argues *Barton* and *Sanders* are undermined by a line of cases from the United States Supreme Court—most recently *Counterman v. Colorado*. In *Counterman*, the Court held that the First Amendment requires that the State must prove, in a true-threats case, that the defendant was aware that others could regard his statements as threatening and delivers them anyway. 600 U.S. at 73, 79–80. The Court acknowledged that such a standard will necessarily impede some true-threat prosecutions of morally culpable defendants. *Id*. at 80. But the Court explained that the imposition of a subjective mens rea of recklessness is necessary to account for true threat prosecutions' chilling effects. *Id*.

Houston's Fourteenth Court of Appeals rejected the argument that *Counterman* has any effect on *Barton* or *Sanders* because it is a "true threats" case and did not "specifically examine whether the sending of repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another was noncommunicative[.]" *Ex parte Ordonez*, 693 S.W.3d 419, 424 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (rejecting argument that 2017 expansion of definition of electronic

---

[4] The Supreme Court of the United States denied certiorari in both cases. *Barton v. Texas* and *Sanders v. Texas*, 143 S. Ct. 774 (2023). Earl states that this case is uniquely ripe for the grant of certiorari, unlike *Barton* and *Sanders*—which were appeals from rulings on pre-trial applications alone.

communication effects holding in *Barton* and *Sanders* that the electronic harassment statute does not implicate First Amendment because gravamen of offense itself did not change).

But even if we were to agree that *Counterman*, and cases before it, cut against the Court of Criminal Appeals' determination that section 42.07(a)(7) does not *implicate* the First Amendment, that determination by the higher court still stands, and we remain bound to follow it.

Next, Earl notes that the Texas Legislature added to section 42.07(a) another means of committing harassment: "A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another . . . the person publishes on an Internet website, including a social media platform, repeated electronic communications in a manner reasonably likely to cause emotional distress, abuse, or torment to another person, unless the communications are made in connection with a matter of public concern." Tex. Pen. Code § 42.07(a)(8); Act of May 12, 2021, 87th Leg., R.S., ch. 178, § 1, 2021 Tex. Gen. Laws 385, 386. Earl notes that the Legislature's attempt to limit the forbidden speech based on its content, is proof the Legislature recognized that the statute restricts speech based on its content, and attempted to avoid constitutionality concerns by limiting its application to matters of public concern. That may be so, but the Legislature did not simultaneously remove or amend subsection 42.07(a)(7). *Cf.*, *Texas Mut. Ins. v. Laird*, 706 S.W.3d 421, 425 (Tex. App.—Austin 2024, no pet.) (stare decisis not applicable because Texas Legislature removed statutory language essential to prior panel's interpretation of statute).

We conclude we are bound by the decisions of the Court of Criminal Appeals and this Court. *Mitschke*, 645 S.W.3d at 256; *see Lost Pines Groundwater Conservation Dist. v. Lower Colorado River Auth.*, No. 03-23-00303-CV, 2024 WL 3207472, at *5 (Tex. App.—

9

Austin June 28, 2024, pet. filed) (mem. op.) (absent decision from higher court or this court sitting en banc that is on point and contrary to prior panel decision or intervening and material change in statutory law, this court is bound by prior holding of another panel of this court).

## CONCLUSION

We overrule Earl's sole issue and affirm the judgment of the trial court.

_____

Chari L. Kelly, Justice

Before Justices Triana, Kelly, and Crump

Affirmed

Filed:   June 27, 2025

Do Not Publish

10